**HOOGOVENS STAAL BV and Hoogovens Steel USA, Inc., Plaintiffs,**

v.

**UNITED STATES, Defendant.**

**AK STEEL CORP., Bethlehem Steel Corp., Inland Steel Indus., Inc., LTV Steel Co., Inc., National Steel Corp., and U.S. Steel Group, Plaintiffs,**

v.

**UNITED STATES, Defendant.**

Slip Op. 98–27.

Court No. 96–10–02394.

United States Court of International Trade.

March 13, 1998.

---

Powell, Goldstein, Frazer & Murphy LLP (Peter O. Suchman, Niall P. Meagher at the trial, Todd J. Friedbacher, Susan M. Mathews, and David J. Sullivan with them on briefs), Washington, DC, for Hoogovens.

Skadden, Arps, Slate, Meagher & Flom LLP (James Hecht and Steven Monroe at trial, Robert E. Lighthizer and John J. Mangan, on briefs), Washington, DC, for AK Steel.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice (Lu-
cius B. Lau) and John D. McInerney, Deputy Chief Counsel, David R. Mason, Attorney–Advisor, Office of Chief Counsel for Import Admin., U.S. Dept. of Commerce, of counsel, Washington, DC, for Defendant.

## MEMORANDUM OPINION

DiCARLO, Senior Judge.

This matter is before the Court under USCIT Rule 56.2 on separate motions for judgment on the agency record brought by Hoogovens Staal BV and Hoogovens Steel USA, Inc. (collectively "Hoogovens") and by AK Steel Corporation, Bethlehem Steel Corporation, Inland Steel Industries, Inc., LTV Steel Company, Inc., National Steel Corporation and U.S. Steel Group (a unit of USX Corporation) (collectively "AK Steel"). The parties challenge aspects of the Commerce Department's final determination of the first administrative review in *Certain Cold–Rolled Carbon Steel Flat Products from the Netherlands,* 61 Fed.Reg. 48,465 (Dep't Commerce 1996) [hereinafter *Final Determination*]. The two actions were consolidated on May 5, 1997.

The Court has jurisdiction under 28 U.S.C. § 1581(c) (1994) and 19 U.S.C. § 1516a(a)(2)(A) (1994).

## BACKGROUND

In August 1993, Commerce issued an antidumping duty order on certain cold-rolled carbon steel flat products from the Netherlands. *Certain Cold–Rolled Carbon Steel Flat Products from the Netherlands,* 58 Fed. Reg. 44,172 (Dep't Commerce 1993). Hoogovens accounts for effectively all exports of such products from the Netherlands to the United States. N.V.W. (USA), Inc. ("NVW") is Hoogovens' wholly-owned U.S. sales office and the importer of record. Pursuant to a request by Hoogovens, Commerce initiated the first administrative review of the antidumping order for the period August 18, 1993 through July 31, 1994. *Certain Cold–Rolled Carbon Steel Flat Products from the Netherlands,* 59 Fed.Reg. 46,391 (Dep't Commerce 1994). Commerce issued preliminary results in that review in July 1995, *Certain Cold–Rolled Carbon Steel Flat Products*

*from the Netherlands,* 60 Fed.Reg. 35,893 (Dep't Commerce 1995) [hereinafter *Preliminary Determination* ], and final results in September 1996, *Final Determination.*

In the *Final Determination* (but not in the *Preliminary Determination* ), Commerce applied 19 C.F.R. § 353.26 (1994), the "reimbursement regulation," after finding that Hoogovens had reimbursed NVW for the cost of antidumping duties. This regulation, in relevant part, states:

(a) *In general.* (1) In calculating the United States price, the Secretary will deduct the amount of any antidumping duty which the producer or reseller:

(I) Paid directly on behalf of the importer; or

(ii) Reimbursed to the importer.

*Id.*

Customs alerted Commerce to the possibility of reimbursement after the *Preliminary Determination* had been published. Commerce issued two supplemental questionnaires to Hoogovens in February and August of 1996. Hoogovens responded with additional sales and financial documentation. Relying on the additional documents and Hoogovens' questionnaire responses, Commerce found that Hoogovens was reimbursing NVW for antidumping duties during the period of the first review.

Commerce subsequently found that no reimbursement had occurred during the second administrative review. *Certain ColdRolled Carbon Steel Flat Products from the Netherlands,* 62 Fed.Reg. 18,476, 18,478 (Dep't Commerce 1997) (final results of second review).

Hoogovens contests the validity of the regulation, arguing that Commerce had no statutory authority to issue it. Hoogovens also argues that even if the regulation is valid, it should not be applied to related parties, and, furthermore, the facts here do not support application of the regulation.

In a separate motion, AK Steel argues that antidumping duties should be deducted as "United States import duties" or other "costs, charges or expenses" from U.S. price in Commerce's margin calculation.

## DISCUSSION

■ In reviewing antidumping investigations and determinations, this Court must hold unlawful any determination "unsupported by substantial evidence on the record, or otherwise not in accordance with the law[.]" 19 U.S.C. § 1516a(b)(1)(B) (1994). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938); *accord FTC v. Indiana Federation of Dentists,* 476 U.S. 447, 454, 106 S.Ct. 2009, 90 L.Ed.2d 445 (1986).

### I. Commerce's Statutory Authority to Issue the Reimbursement Regulation

Hoogovens argues that Commerce had no statutory authority to issue the reimbursement regulation. It claims that the regulation is inconsistent with the overall statutory and regulatory scheme, which provides remedial, not punitive, relief. According to Hoogovens, the regulation doubles the statutory remedy, resulting in a punitive order.

■ Commerce is granted authority to issue regulations to implement the antidumping statute. *See* 5 U.S.C. § 301; 19 U.S.C. §§ 1673–1677h. The Court need consider only whether the regulation is based on a permissible construction of the statute. *Melamine Chem., Inc. v. United States,* 732 F.2d 924, 928 (Fed.Cir.1984) (citations omitted); *Consumer Prod. Div., SCM Corp. v. Silver Reed America, Inc.,* 753 F.2d 1033, 1039 (Fed.Cir.1985) (quoting *Melamine* ) (agency's interpretation of its regulation must be reasonable and consistent with statute).

The antidumping statute provides a remedy to domestic producers injured by dumping. *Chaparral Steel Co. v. United States,* 901 F.2d 1097, 1103–04 (Fed.Cir.1990); *BadgerPowhatan, Inc. v. United States,* 9 CIT 213, 216–17, 608 F.Supp. 653, 656 (1985). Commerce has noted that "[t]he remedial effect of the law is defeated … where exporters themselves pay antidumping duties, or reimburse importers for such duties." *Color Television Receivers from the Republic*

*of Korea,* 61 Fed.Reg. 4,408, 4,410 (Dep't Commerce 1996) (final admin. review) [hereinafter *Korean TVS* ]. The regulation is designed to preserve the statute's remedial purpose by discouraging foreign exporters from assuming the cost of duties. *Id.* at 4,410–11.

█ Commerce's statutory construction is a reasonable one. If the exporter assumes the cost of antidumping duties, an importer could continue to import at the lower, dumped price. U.S. producers would remain at a competitive disadvantage without the benefit of a viable remedy for the injury caused by the dumped imports. The regulation preserves the statutory remedy by accounting for the amount of duties reimbursed or paid by the exporter so that the final assessed duty will remedy the injury. Presumably, an exporter will be reluctant to continue paying the cost of antidumping duties because the margin will increase accordingly each time Commerce reviews it. Thus, the effect of the order on import prices will be preserved.

The regulation is consistent with the language of the statute and furthers the statutory purpose of remedying injury caused by unfairly traded imports. Commerce's decision to issue the reimbursement regulation is in accordance with the law.

II. *Deference to Commerce's "New" Interpretation of the Reimbursement Regulation*

Hoogovens argues that the Court's deference to Commerce is limited where Commerce has had no clear or longstanding interpretation of a regulation. It notes that Commerce has never before applied the reimbursement regulation to a foreign exporter and its U.S. subsidiary. Furthermore, Hoogovens argues, Commerce expressly decided not to apply the regulation to related-parties transactions in 1993 and thereafter, thus establishing a policy against such application during the time of this review. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof,* 58 Fed.Reg. 39,729, 39,736 (Dep't Commerce 1993) (final admin. review) [hereinafter *AFBs II* ]; *Antifriction Bearings (Other Than Tapered Roller Bear-*

*ings) and Parts Thereof,* 60 Fed.Reg. 10,900, 10,907 (Dep't Commerce 1995) (final admin. review) [hereinafter *AFBs III* ].

█ Commerce is not required to follow its interpretation in *AFBs II* if new arguments or facts support a different conclusion. *Citrosuco Paulista, S.A. v. United States,* 12 CIT 1196, 1209, 704 F.Supp. 1075, 1088 (1988); *see also Hussey Copper, Ltd. v. United States,* 17 CIT 993, 997, 834 F.Supp. 413, 418 (1993). It may repudiate its prior reasoning, it may narrow the zone in which that reasoning applies, or it may find that particular facts in this case justify a departure from the general rule. *Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade,* 412 U.S. 800, 808, 93 S.Ct. 2367, 37 L.Ed.2d 350 (1973). If Commerce intends to depart from a prior position, however, it must give its reasons for doing so, thereby allowing the Court to "understand the basis of the agency's action and . . . judge the consistency of that action with the agency's mandate." *Id.* at 808, 93 S.Ct. 2367.

█ Subsequent to *AFBs II* and *AFBs III,* Commerce reversed its position, finding that *AFBs II* was "inconsistent with both the plain language of the regulations and the regulatory history." *Korean TVS* at 4,410. The Department reaffirmed its pre-*AFBs II* view that "reimbursement, within the meaning of the regulation, takes place between related parties if the evidence demonstrates that the exporter directly pays antidumping duties for the related importer or reimburses the importer for such duties." *Id.* at 4,411 (citing *Brass Sheet and Strip from the Netherlands,* 57 Fed.Reg. 9,534, 9,537 (Dep't Commerce 1992); *Brass Sheet and Strip from Sweden,* 57 Fed.Reg. 2,706, 2,708 (Dep't Commerce 1992); and *Brass Sheet and Strip from Korea,* 54 Fed.Reg. 33,257, 33,258 (Dep't Commerce 1989)). In *Korean TVS,* Commerce found no evidence of reimbursement. In this review, Commerce has reiterated its *Korean TVS* position that the regulation applies where an exporter reimburses a related importer for antidumping duties. *Final Determination* at 48,470.

Commerce's repudiation of its prior position was explained in *Korean TVS* and its

decision that the regulation applies to related parties is entitled to deference.

### III. Conformity with the GATT Antidumping Code

█ Hoogovens argues that the regulation violates the United States' international trade obligations by imposing antidumping duties that exceed calculated dumping margins.

The GATT Antidumping Code, applicable to this review, permits importing countries to levy antidumping duties on dumped imports that injure domestic producers, but "[t]he amount of the antidumping duty must not exceed the margin of dumping[.]" Agreement on Implementation of Article VI of the General Agreement on Tariffs and Trade art. 8.3, Apr. 12, 1979, 31 U.S.T. 4919, 1186 U.N.T.S. 2, *incorporated into U.S. law by Trade Agreements Act of 1979*, Pub.L. No. 96–39, 93 Stat. 144 (1979).

Under the U.S. antidumping statute, the margin of dumping is equivalent to "the amount by which the foreign market value exceeds the United States price for the merchandise[.]" 19 U.S.C. § 1673 (1988). The reimbursement regulation provides that the calculation of U.S. price include an adjustment for the amount of any antidumping duties reimbursed or paid by the exporter. 19 C.F.R. § 353.26 (1994). Commerce has explained that the regulation preserves the remedial purpose of the GATT Code and the U.S. antidumping law. Without the regulation, a foreign exporter or producer could assume the cost of antidumping duties owed and thereby nullify the effect of the duties in the U.S. market. *Korean TVS*, 61 Fed.Reg. at 4,410.

Although it may appear that Commerce simply doubles the final margin when it applies the reimbursement regulation, that is not the case. Rather, as part of the final margin calculation, Commerce adjusts the U.S. price downward to reflect the amount of duty reimbursed to, or paid on behalf of, the importer. *See* 19 C.F.R. § 353.26. The amount deducted may or may not equal the full margin, depending on the facts of the case. The resulting final duty equals the calculated margin between the foreign market value and the adjusted U.S. price; it does not exceed the margin. In this case, Commerce found that Hoogovens was reimbursing NVW for the full amount of antidumping duties owed; as a result, the full amount was deducted from the U.S. price. This process does not violate Article 8.3 of the GATT Antidumping Code.

### IV. Evidence from Subsequent Review Not Relevant

█ In the second annual review, Commerce found that no reimbursement occurred during the period reviewed. Hoogovens argues that the findings of fact in the second review render Commerce's final determination in the first review inaccurate and therefore unsustainable. This argument is without merit. The Court can not consider evidence presented in the second administrative review when it reviews the first administrative review. The record for review is statutorily defined as "a copy of all information presented to or obtained by the Secretary, the administering authority, or the Commission *during the course of the administrative proceeding . . . .*" 19 U.S.C. § 1516a(b)(2)(A)(I) (1994) (emphasis added); *Beker Indus. Corp. v. United States*, 7 CIT 313, 315, 1984 WL 3727 (1984) (citing S.Rep. No. 96–249 at 247–48 (1979)). Plaintiffs generally may not supplement that record on judicial review. *Rhone Poulenc, Inc. v. United States*, 13 CIT 218, 222, 710 F.Supp. 341, 345 (1989), *aff'd*, 899 F.2d 1185 (Fed.Cir. 1990). Whatever additional information that persuaded Commerce that Hoogovens had discontinued its practice of reimbursing NVW during the second period of review was not a part of the record for this review. Commerce correctly based its decision on the information in the record.

### V. Insufficient Explanation of Evidence Supporting Commerce's Finding of Reimbursement

Hoogovens argues that evidence on the record does not support Commerce's finding of reimbursement.

█ The law requires substantial evidence to sustain Commerce's decision. *Con-*

*solidated Edison,* 305 U.S. at 229, 59 S.Ct. 206. As noted earlier, substantial evidence is relevant evidence that a "reasonable mind might accept as adequate to support a conclusion." *Id.* "As a general rule, an administrative agency must articulate the reasons supporting its decision, enabling the court to review whether the agency acted arbitrarily." *Shieldalloy Metallurgical Corp. v. United States,* 20 CIT ——, ——, 947 F.Supp. 525, 529 (1996) (citations omitted). Commerce must articulate a "rational connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962). While this Court may not supply a reasoned basis for the agency's action that Commerce itself has not given, *SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), it will uphold a decision of less than ideal clarity if the agency's path may be reasonably discerned, *Colorado Interstate Gas Co. v. FPC,* 324 U.S. 581, 595, 65 S.Ct. 829, 89 L.Ed. 1206 (1945). *Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc.,* 419 U.S. 281, 285–286, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974) (agency's treatment of evidence not arbitrary where court can discern a rational basis for it).

██ According to the defendant's brief, Commerce based its finding on Hoogovens' questionnaire responses, credit memoranda, sales invoices to U.S. customers, and the Hoogovens–NVW agency agreement. (Def.'s Opp'n to Mots. J. Agency R. at 30–32 & apps. 3–4 (Conf.Docs. 41, 48).) Commerce failed, however, to articulate a reasoned basis for its decision beyond the following conclusory statements: "The Department has determined that the evidence of record in this review demonstrates that Hoogovens has agreed to reimburse NVW, the importer of record, for antidumping duties. Therefore, for the final results we have applied the reimbursement regulation." (Hoogovens Mem. Points & Authorities in Support Mot. J. on Agency R. ex. 10 at 1 (ITA Final Analysis Mem., Aug. 29, 1996).) The *Final Determination* states, "[a]s discussed above, the evidence of record demonstrates that Hoogovens has agreed to reimburse NVW for antidumping duties. Therefore, the regulation applies." *Final Determination* at 48,-

471. At oral argument, the defendant acknowledged that the *Final Determination* does not, in fact, discuss the evidence upon which Commerce based its finding.

Commerce failed to identify for the record the evidence in record documents that led to its conclusion. The Hoogovens–NVW agreement includes no mention of antidumping duties or reimbursement. Although other documents on the record suggest that reimbursement was occurring, Commerce does not identify which evidence supports its finding of reimbursement. Commerce raised the issue for the first time in its *Final Determination,* without adequate analysis. The defendant's *post hoc* rationalization in its brief is not sufficient to meet the requirement for a reasoned articulation of a material decision in an agency determination. *See Timken Co. v. United States,* 20 CIT ——, ——, 937 F.Supp. 953, 955 (1996); *see also* 19 U.S.C. § 1677f(I) (1994).

Because the record is not complete enough to provide for meaningful review, the Court remands the issue of reimbursement to Commerce for reconsideration and an articulation of the facts in the record that support its decision.

## VI. *Application of Final Margin to All Period–of–Review Entries*

██ In the alternative, Hoogovens argues that the Court, if it sustains Commerce's determination, should remand the case for application of the final margin from the date of publication of the *Final Determination* rather than the *Preliminary Determination.*

Under the statute, final duties are assessed upon liquidation of all subject merchandise entered during the period of review. *See* 19 U.S.C. § 1505(b) (Supp.1993). "The uncertainty of knowing the final amount of duties due at the time of entry is simply an inherent part of importing merchandise into the United States .... [thus, the importer should anticipate] the possibility that additional duties would be owed[.]" *D & L Supply Co. v. United States,* 17 CIT 1419, 1422–23, 841 F.Supp. 1312, 1315 (1993) (no violation of due process to retroactively increase

antidumping duties payable to all entries during period of review). The final calculated margin may differ from the preliminary estimated margin for any number of reasons, including new facts or changes in methodology or policy. Whatever the final margin is found to be, Commerce is within its authority in applying it to all entries made during the period of review.

VII. *Antidumping Duties Not "United States Import Duties" or "Additional Costs, Charges and Expenses"*

■ In its separate motion, AK Steel argues that Commerce should have deducted antidumping duties from U.S. price under 19 U.S.C. § 1677a, which requires Commerce to reduce the U.S. price by "the amount, if any, included in such price, attributable to any additional costs, charges, and expenses, and United States import duties, incident to bringing the merchandise . . . to the place of delivery in the United States[.]" 19 U.S.C. § 1677a(d)(2)(A) (1988). AK Steel argues that antidumping duties are "United States import duties" or, alternatively, other "costs, charges or expenses" which are "incident to bringing the merchandise from the place of shipment . . . to the place of delivery in the United States." (AK Steel Br. in Support Mot. J. Under R. 56.2 at 8.)

■ The U.S. antidumping statute does not define the terms "United States import duties" or "costs, charges or expenses." In the absence of a clear statutory definition, "the question for the court is whether the agency's [decision] is based on a permissible construction of the statute." *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

Commerce's long-standing policy and practice is not to treat estimated or final antidumping or countervailing duties as import duties or costs under 19 U.S.C. § 1677a(d). The Court has held that Commerce is "correct not to deduct [from U.S. price] cash deposits of estimated antidumping duties, which may not bear any relationship to the actual dumping duties owed" under § 1677a(d). *Federal–Mogul Corp. v. United States*, 17 CIT 88, 108, 813 F.Supp. 856, 872

(1993) (estimated deposits of antidumping duties are not analogous to estimated deposits of "normal import duties"). "If deposits of estimated antidumping duties entered into the calculation of present dumping margins, then those deposits would work to open up a margin where none otherwise exists." *PQ Corp. v. United States*, 11 CIT 53, 67, 652 F.Supp. 724, 737 (1987). More recently, the Court sustained Commerce's decision not to deduct final assessed antidumping and countervailing duties as normal import duties from U.S. price in its margin calculation. *AK Steel Corp. v. United States*, 21 CIT ——, ——, 988 F.Supp. 594, 607 (1997) (Commerce's explanation that deducting antidumping duties as import duties from U.S. price would result in double-counting is rational).

Commerce reasoned in its *Final Determination* that antidumping duties derive from a calculated margin of dumping, not from an assessment against value, as is the case for normal customs duties; further, deducting antidumping duties as costs or import duties from U.S. price would, in effect, double-count the margin. *Final Determination* at 48,469.

This Court finds Commerce's rationale to be a permissible construction of the statute. If Commerce were to deduct existing antidumping duties as a matter of course in its administrative reviews, it would reduce the U.S. price—and increase the margin—artificially. As discussed earlier, an antidumping order is designed to raise the price of dumped goods to a fair level in the import market. It is not a normal import duty or an extra "cost" or "expense" to the importer—it is an element of a fair and reasonable price.

Commerce's decision not to deduct antidumping duties as a cost or expense from U.S. price is in accordance with the law.

## CONCLUSION

The Court remands to Commerce to reconsider whether reimbursement occurred and to cite to evidence in the record supporting its decision. Commerce's *Final Determination* is sustained in all other respects.

## ORDER

Upon consideration of all papers and proceedings in this case submitted for decision, and after due deliberation, it is hereby

ORDERED that Commerce reconsider whether reimbursement occurred during the period reviewed in *Certain Cold–Rolled Carbon Steel Flat Products from the Netherlands,* 61 Fed.Reg. 48,465 (Dep't. Commerce 1996) and cite to evidence in the record that supports its decision. Commerce's *Final Determination* is sustained in all other respects.

SO ORDERED.