**BETHLEHEM STEEL CORP., AK Steel Corp., Inland Steel Indus., Inc., LTV Steel Co., Inc., National Steel Corp., and U.S. Steel Group, Plaintiffs,**

v.

**UNITED STATES, Defendant.**

**Hoogovens Staal BV and Hoogovens Steel USA, Inc., Plaintiffs,**

v.

**United States, Defendant.**

Slip Op. 98–145.
Nos. 97–05–00862.

United States Court of International Trade.

Oct. 14, 1998.

---

Skadden, Arps, Slate, Meagher & Flom LLP, Washington, DC, (James Hecht and Steven Monroe at the trial, Robert E. Lighthizer and John J. Mangan on the briefs) for plaintiffs Bethlehem Steel Corp. et al.

Powell, Goldstein, Frazer & Murphy LLP, Washington, DC, (Peter O. Suchman, Niall P. Meagher at the trial, Susan M. Mathews and David J. Sullivan with them on the briefs) for plaintiffs Hoogovens Staal BV et al.

Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Commer-

cial Litigation Branch, Civil Division, U.S. Department of Justice (Lucius B. Lau ) and David R. Mason, Attorney–Advisor, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of counsel, for defendant.

## MEMORANDUM OPINION

DICARLO, Senior Judge:

This matter is before the Court under USCIT Rule 56.2 on motions for judgment on the agency record brought by Bethlehem Steel Corporation, AK Steel Corporation, Inland Steel Industries, Inc., LTV Steel Company, Inc., National Steel Corporation and U.S. Steel Group (collectively "Bethlehem Steel") and by Hoogovens Staal BV and Hoogovens Steel USA, Inc. (collectively "Hoogovens"). The parties challenge aspects of the Commerce Department's final results of administrative review in *Certain Cold–Rolled Carbon Steel Flat Products From the Netherlands,* 62 Fed.Reg. 18,476 (Dep't Commerce 1997) [hereinafter *Final Results* ], as amended by *Cold–Rolled Carbon Steel Flat Products From the Netherlands,* 62 Fed.Reg. 32,294 (Dep't Commerce 1997) (amended final admin. review) [hereinafter *Amended Final Results* ]. The two actions were consolidated on September 25, 1997.

The Court has jurisdiction under 28 U.S.C. § 1581(c) (1994) and 19 U.S.C. § 1516a(a)(2)(A) (1994).

## BACKGROUND

In August 1993, Commerce issued an antidumping duty order on certain cold-rolled carbon steel flat products from the Netherlands. *Certain Hot–Rolled Carbon Steel Flat Products and Certain Cold–Rolled Carbon Steel Flat Products From the Netherlands,* 58 Fed.Reg. 44,172 (Dep't Commerce 1993) (antidumping order and amend. Final Determinations of Sales at Less Than Fair Value). Final results of the first administrative review were issued in September 1996. *Certain Cold–Rolled Carbon Steel Flat Products From the Netherlands,* 61 Fed.Reg. 48,-465 (Dep't Commerce 1996). In that review, Commerce found that Hoogovens was reimbursing its sales agent and importer, N.V.W.

(USA), Inc. ("NVW"), for antidumping duties, in violation of 19 C.F.R. § 353.26 (1994), the "reimbursement regulation." Hoogovens appealed that finding to this court. *See Hoogovens Staal BV v. United States,* 22 CIT ——, 4 F.Supp.2d 1213(1998) (Mar. 13, 1998) [hereinafter *Hoogovens I* ]. Subsequent to the first review, NVW was renamed Hoogovens Steel USA, Inc. ("Hoogovens USA"). In September 1995, Commerce initiated a second administrative review covering the period August 1, 1994 through July 31, 1995. *Initiation of Antidumping Duty Administrative Reviews,* 60 Fed.Reg. 46,817 (Dep't Commerce 1995).

Preliminary results were issued on October 4, 1996. *Certain Cold–Rolled Carbon Steel Flat Products From the Netherlands,* 61 Fed.Reg. 51,888 (Dep't Commerce 1996) (prelim.admin.review) [hereinafter *Preliminary Results* ]. Final results were issued on April 15, 1997, *Final Results,* 62 Fed.Reg. 18,476, and amended on June 13, 1997, *Amended Final Results,* 62 Fed.Reg. 32,294.

In September 1996, Hoogovens submitted a revised agency agreement that stated that Hoogovens USA (formerly NVW) would be responsible for any and all antidumping duties assessed on merchandise imported by it and that in no case would Hoogovens reimburse its importer for antidumping duties paid. *Id.* at 18,477. On February 28, 1997, Hoogovens reported the corporate reorganization of and capital infusion to Hoogovens USA. (P.R. 95 at 1.). On March 28, 1997, Hoogovens submitted information regarding a commercial bank loan to Hoogovens USA. (*See* P.R. 98.)

In this action, Hoogovens claims 1) that it is entitled to a deduction of sales expenses from the home market price under 19 U.S.C. § 1677b(a)(7)(B) (1994), and 2) that Commerce's retroactive application of its new currency conversion methodology is contrary to law. *See Final Results* at 18,481–82.

Bethlehem Steel claims 1) that Commerce erroneously found that Hoogovens is no longer reimbursing its importer for antidumping duties, 2) that, in the alternative, Commerce should have deducted antidumping duties from the U.S. price as "United States import

duties" or other "costs, charges or expenses," and 3) that Commerce exceeded its authority when it corrected ministerial errors and issued *Amended Final Results* after this action had commenced.

## DISCUSSION

In reviewing antidumping investigations and determinations, this Court must hold unlawful any determination "unsupported by substantial evidence on the record, or otherwise not in accordance with law[.]" 19 U.S.C. § 1516a(b)(1)(B) (1994). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938); *accord FTC v. Indiana Federation of Dentists*, 476 U.S. 447, 454, 106 S.Ct. 2009, 90 L.Ed.2d 445 (1986).

I. *Constructed Export Price Offset Adjustment*

■ Hoogovens claims that it is entitled to an offset adjustment under 19 U.S.C. § 1677b(a)(7)(B). An offset adjustment to the home market price is granted where home market sales are at a more advanced level of trade than constructed export price sales, but available data do not enable Commerce to quantify a direct adjustment to account for the difference in trade levels. 19 U.S.C. § 1677b(a)(7)(B) (1994). The court agrees with Commerce that Hoogovens has not produced evidence to support its claim for an adjustment.

■ The burden of producing evidence to justify the adjustment is on Hoogovens. *See Statement of Administrative Action Uruguay Round Agreements Act*, H.R. Doc. No. 103–316, at 829 (1994) [hereinafter "SAA"] ("as with all adjustments which benefit a responding firm, the respondent must demonstrate the appropriateness of such adjustment"); *Final Results* at 18,481–82 (adjustment not automatic; burden is on respondent to demonstrate that home market value is at different level of trade and more advanced stage of distribution than constructed export price).

■ To establish a difference in levels of trade under the statute, Hoogovens must show that each level involves the performance of different selling activities. 19 U.S.C. § 1677b(a)(7)(A)(i) (1994); SAA at 829 (1994). Selling functions might include, for example, market research, advertising, or other selling or service activities. (Dep't Commerce Suppl. Questionnaire, Pub. Doc. 28 at A–2 (Dec. 13, 1995).)

■ Hoogovens fails to meet that requirement. While it points to functional differences in its customers and differences in contract terms negotiated with each type of customer (Hoogovens Resp. to Sec. A of Dep't Commerce Questionnaire, Pub. Doc. 12 at 18–24 (Oct. 17, 1995)), Hoogovens fails to articulate any differences in its own selling functions, as required by statute. In fact, Hoogovens admits that it "cannot differentiate among the selling functions performed and services offered to different classes of home market or export price customers." (Hoogovens Resp. to Supplemental Questionnaire, Pub. Doc. 32 at 3–4 (Jan. 22, 1996).) Thus, it would appear that by its own admission Hoogovens does not perform different selling activities for its home market and U.S. constructed export price customers.

Instead of establishing different levels of distribution or different selling activities, Hoogovens limits its argument to a comparison of Commerce's calculation of home market and constructed export prices. It argues that because certain expenses (indirect selling expenses, service and warranty expenses and inventory carrying costs) were deducted from the constructed export price but not from the comparable home market price, there is an inherent difference in levels of trade. (Hoogovens Mot. J. on Agency R.) (Public Version) at 10 (citing Hoogovens' Resp. to Sec. B of Dep't Commerce Questionnaire, Pub. Doc. 24 at B–37 to B–46 (Nov. 14, 1995).)

■ Application of the offset adjustment provision entails more than an automatic deduction on the home market side to match deductions made on the U.S. price side, as Hoogovens seems to suggest. Because Hoogovens did not demonstrate different selling

functions or otherwise establish a difference in levels of trade as required under 19 U.S.C. § 1677b(a)(7)(A),(B) (1994), Commerce's decision not to make the adjustment is in accordance with law.

In its discussion of this issue, the defendant notes that Commerce erred in its calculation of the constructed export price by deducting home market selling expenses that were not related to commercial activity in the United States. .(Def. Mem. in Opp'n to Mots. J. Agency R. at 70.) *See* 19 U.S.C. § 1677a(d)(1)(D) (1994). Hoogovens argues that Commerce's error in calculation validates Hoogovens' own argument in favor of an offset adjustment by "comparing the sales activities included in the [constructed export price] after adjustment to those selling activities included in the [home market] sales prior to adjustment." (Hoogovens' Reply Brf. at 7.) However, as noted above, the offset adjustment requires more than a simple comparison of deductions made (or not made) on either side of the margin equation.

■ Hoogovens further complains that it did not have proper notice of Commerce's change in methodology. It argues that Commerce first explained the post-Uruguay Round statutory changes well after the *Final Results* were issued and three days after Hoogovens had filed its complaint in this action.

Hoogovens' arguments with regard to notice are without merit. While Commerce's regulations were not promulgated until after the *Final Results* were issued, the statute had been promulgated in December 1994, well before the review was initiated. *See* 19 U.S.C. § 1677b. Therefore, Hoogovens was on notice.

■ Since Hoogovens was on notice, the exhaustion of remedies doctrine applies. "The Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d) (1994). Nevertheless, the court has discretion to remand an issue to the agency despite nonexhaustion of remedies. *Id.* (court shall require exhaustion *"where appropriate"*) (emphasis added). *See also Alhambra Foundry Co. v. United States,* 12

CIT 343, 346–49, 685 F.Supp. 1252, 1255–57 (1988). However, the Supreme Court has cautioned that a remand requires a showing that the failure to raise an issue was not the result of a lack of due diligence on the part of the claimant. *ILWU Local 142 v. Donovan,* 12 CIT 87, 91, 678 F.Supp. 307, 310 (1988) (citing *Toledo Scale Co. v. Computing Scale Co.,* 261 U.S. 399, 424–25, 43 S.Ct. 458, 67 L.Ed. 719 (1923)). To the extent Hoogovens could have raised issues concerning the calculation of the constructed export price during the course of the administrative proceedings, the Court finds it appropriate to require the exhaustion of administrative remedies and will not remand this issue to Commerce.

II. *"Retroactive" Application of New Methodology*

■ In this review, Commerce used the new, post-Uruguay Round currency conversion standard to convert home market prices to U.S. dollars. Hoogovens claims that Commerce's "retroactive" application of the new methodology was an unlawful abuse of discretion and that Commerce should have applied the methodology in effect during the period under review. It argues that an exporter can not price its merchandise fairly, in accordance with the U.S. antidumping law, if it can not anticipate the methodologies Commerce will apply in a potential antidumping investigation.

Hoogovens' claims are without merit. The statute clearly states that changes enacted in the Uruguay Round Agreements Act shall apply to all administrative reviews initiated after January 1, 1995. *See Uruguay Round Agreements Act,* Pub.L. No. 103–465 § 291, 108 Stat. 4809, 4931 (set out as a note under 19 U.S.C. § 1671 (1994)). The current review was initiated in September 1995.

Commerce is granted authority to issue regulations to implement the antidumping statute under 5 U.S.C. § 301. *See also* 19 U.S.C. §§ 1673–1677h. Its application of the regulations must be reasonable and consistent with the statute. *Melamine Chem. v. United States,* 732 F.2d 924, 928 (Fed.Cir. 1984) (citations omitted). Here, Hoogovens does not contest the reasonableness of the new currency conversion regulation.

Given the retrospective nature of Commerce's administrative reviews, an exporter can not expect to predict exactly its potential antidumping duty liability at the time of import into the United States. *See D & L Supply Co. v. United States,* 17 CIT 1419, 1422–23, 841 F.Supp. 1312, 1315 (1993) ("the uncertainty of knowing the final amount of duties due at the time of entry is simply an inherent part of importing merchandise into the United States.")

Hoogovens had notice for purposes of this review of the change in methodology when Commerce began to apply the "date of sale," or daily, exchange rates in its first post-Uruguay Round antidumping calculations in October 1995. *See e.g., Polyvinyl Alcohol From Taiwan,* 60 Fed.Reg. 52,651, 52,653 (Dep't Commerce 1995) (prelim. det. sales at less than fair value). In March 1996, Commerce issued a notice of change in conversion methodology confirming that the new methodology applies with respect to all investigations and reviews requested after the Uruguay Round Agreements Act went into effect on January 1, 1995. *Notice: Change in Policy Regarding Currency Conversions,* 61 Fed. Reg. 9,434 (Dep't Commerce 1996).

For the above reasons, the Court finds that Commerce acted in accordance with the law in its application of a daily exchange rate methodology.

III. *Evidence to Support Finding of No Reimbursement*

■ Bethlehem Steel argues that evidence on the record does not support Commerce's finding of no reimbursement. In particular, it argues that Hoogovens' revised agency agreement and cash deposit refunds from Hoogovens USA to Hoogovens constitute nothing more than a post hoc attempt by Hoogovens to avoid application of the reimbursement regulation. (Bethlehem Steel Br. Supp. Mot. J. at 34–42 (Public Version).)

■ "As a general rule, an administrative agency must articulate the reasons supporting its decision, enabling the court to review whether the agency acted arbitrarily." *Shieldalloy Metallurgical Corp. v. United States,* 20 CIT ——, ——, 947 F.Supp. 525,

529 (1996) (citations omitted). Commerce has done so here, stating that "[t]he issue is not when the arrangement to reimburse was abrogated, but rather whether there is an agreement to reimburse antidumping duties *to be assessed* at the time of the final results." *Final Results* at 18,478 (emphasis added).

Commerce must base its decisions on substantial evidence found in the record. *Consolidated Edison,* 305 U.S. at 229, 59 S.Ct. 206. Here, Commerce based its finding on 1) the revised agency agreement, which purports to eliminate reimbursement of antidumping duties, and 2) evidence of Hoogovens USA's refund of cash deposits to Hoogovens. *Final Results* at 18,478. Commerce found that, at the time of the *Final Results,* Hoogovens no longer had an agreement to reimburse its importer for antidumping duties assessed on U.S. sales and, further, that the importer had reimbursed Hoogovens for cash deposits paid. *Id.* The agency agreement and refunds constitute substantial evidence to support this finding.

Bethlehem Steel further argues that Commerce based its determination on information placed on the record without adequate opportunity for comment, analysis or verification. This argument is without merit. The revised agency agreement and refund receipts were placed on the record on September 27, 1996, approximately six and one-half months prior to issuance of the *Final Results.* (*See* Conf. Doc. 30.) It is that evidence that Commerce relied upon to find no reimbursement. *Final Results* at 18,478. On March 25, 1997, Commerce issued a supplemental questionnaire requesting information on the source of funds with which Hoogovens USA repaid Hoogovens for uncollected antidumping duties. (Dep't Suppl. Questionnaire, Pub. Doc. 97.) Hoogovens responded to that request on March 28, 1997 by supplying information on a loan from its bank in the Netherlands to Hoogovens USA. (Hoogovens Resp. Dep't's Mar. 28, 1997 Suppl. Questionnaire, Pub. Doc. 98.) Commerce then issued its *Final Results* on April 15, 1997.

■ Bethlehem Steel objects to the timing of Hoogovens' March 28 response. The statute requires Commerce to provide par-

ties with "reasonable time" to respond to information submitted during the course of a proceeding. 19 U.S.C. § 1677m(g). The statute, however, also imposes time limits within which Commerce must complete its administrative reviews. 19 U.S.C. § 1675(a)(3)(A). Commerce gave Bethlehem Steel two days to comment on Hoogovens' supplemental response, a response period shortened in order to meet the statutory deadline for issuing final results. When Bethlehem Steel filed its comments, it did not complain about the abbreviated response time. (*See* Pet'r's Cmts. on Hoogovens' Mar. 28, 1997 Submission Pub. Doc. 99 (Mar. 31, 1997).) By failing to protest at the time of its response, Bethlehem Steel failed to exhaust its administrative remedies within the meaning of 28 U.S.C. § 2637(d) (1994). Thus, it cannot now claim that it had an inadequate opportunity to comment on the supplemental information.

Finally, Bethlehem Steel argues that Hoogovens must be reimbursing its importer because Hoogovens USA is financially incapable of assuming the cost of antidumping duties. Commerce's regulations require only that, when merchandise is liquidated, an importer file a certificate stating that it will not be reimbursed by the manufacturer, producer, seller or exporter for antidumping duties assessed on the imported merchandise. 19 C.F.R. § 353.26(b). Nowhere in the regulations is Commerce required to verify the financial capability of the importer to pay for antidumping duties. Commerce evidently has recognized the potential for abuse, and is aware of its obligation to scrutinize data provided by a party. For example, in the *Final Results,* Commerce noted that

> [b]ecause Hoogovens previously had an agreement to reimburse duties, and continues to advance the funds to cover cash deposits, in future reviews [Commerce] will thoroughly monitor the refund of cash deposits, scrutinize the operation of the agreement, and examine whether there is any inappropriate financial intermingling, to ensure that reimbursement does not recur.

*Final Results* at 18,478. In this review, Commerce's supplemental questionnaire and Hoogovens' response enabled Commerce to investigate the potential for inappropriate financial intermingling. Apparently Commerce found no evidence of abuse. Such a finding is within its discretion; Commerce was not obligated as a matter of law to find that the loan data nullified the agency agreement and refund receipts for purposes of the reimbursement regulation. Commerce's finding of no reimbursement is, therefore, in accordance with law and entitled to deference.

### IV. Antidumping Duties Not "Import Duties" or "Costs"

■ Bethlehem Steel argues in the alternative that, if Commerce does not apply the reimbursement regulation, it should deduct antidumping duties from U.S. price under 19 U.S.C. § 1677a, which requires Commerce to reduce the U.S. price by "the amount, if any, included in such price, attributable to any additional costs, charges, or expenses, and United States import duties, which are incident to bringing the subject merchandise ... to the place of delivery in the United States[.]" 19 U.S.C. § 1677a(c)(2)(A) (1994). Bethlehem Steel argues that antidumping duties are "United States import duties" or, alternatively, other "costs, charges or expenses" which are "incident to bringing the subject merchandise from the place of shipment ... to the place of delivery in the United States[.]" *Id., cited in* (Bethlehem Steel Br. in Support Mot. J. Under R. 56.2, Public Version at 59, 69–70).

This issue was raised and addressed in *Hoogovens I,* 4 F.Supp.2d 1213, 1220–1223. Subsequent changes in the wording of § 1677a provide no basis for revisiting the issue. For the reasons stated in that opinion, therefore, the Court finds that Commerce's rationale for not deducting antidumping duties under § 1677a(c) is a permissible construction of the statute. Commerce's decision not to deduct antidumping duties as a cost or import duty from U.S. price is in accordance with the law.

### V. Correction of Ministerial Errors in "Amended Final Results"

Bethlehem Steel argues that, because Commerce's correction of ministerial errors in the *Amended Final Results* was untimely

and may not have been correct as a procedural matter, the *Final Results* should be remanded to Commerce to correct the errors referenced in the *Amended Final Results*. As no party contests the merits of the corrections, the Court will not remand them.

■ Commerce is given authority to correct ministerial errors "within a reasonable time after the determinations are issued." 19 U.S.C. § 1675(h) (1994). Once a judicial proceeding has commenced with the filing of a summons, however, Commerce should not make ministerial corrections without the Court's permission. *Zenith Electronics Corp. v. United States,* 12 CIT 932, 699 F.Supp. 296 (1988), *aff'd* 884 F.2d 556 (Fed. Cir.1989) (to avoid conflict with Court's authority, Commerce must apply for permission to amend final determinations once judicial proceeding has commenced); *see* 19 U.S.C. § 1516a(a)(2)(A) (1994); 28 U.S.C. § 2632(c) (1994) (an action is commenced with the filing of a summons).

■ In this case, Commerce issued its *Amended Final Results* after summonses had been filed. Because this action had commenced, Commerce should not have made ministerial changes without the permission of this Court. However, in this case, a remand would be pointless, as neither party protests the corrections made by Commerce. In the interest of judicial and administrative efficiency, and without deciding on the merits of the corrections, the Court will allow the corrected calculations to stand as published in the *Amended Final Results*.

### CONCLUSION

The Court sustains Commerce's *Final Determination.*

### ORDER

Upon consideration of all papers and proceedings in this case submitted for decision, and after due deliberation, it is hereby

ORDERED that Commerce's *Final Determination* is sustained in all respects.

SO ORDERED.