**SLIP OP. 00-38**

# UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: HONORABLE JAMES L. WATSON, SENIOR JUDGE**

--------------------------------------------------X

| | |
|---|---|
| **HOOGOVENS STAAL BV and** | **:** |
| **HOOGOVENS STEEL USA, INC.,** | |
| | **:** |
| **Plaintiffs,** | |
| | **:** |
| **v.** | |
| | **:**       **Consol. Ct. No. 96-10- 02394** |
| **UNITED STATES,** | |
| | **:** |
| **Defendant.** | |

-------------------------------------------------- **X**

| | |
|---|---|
| **AK STEEL CORP., BETHLEHEM** | **:** |
| **STEEL CORP., INLAND STEEL** | |
| **INDUS., INC., LTV STEEL CO.,** | **:** |
| **INC., NATIONAL STEEL CORP.,** | |
| **and U.S. STEEL GROUP,** | **:** |
| | |
| **Plaintiffs,** | **:** |
| | |
| **v.** | **:** |
| | |
| **UNITED STATES,** | **:** |
| | |
| **Defendant.** | **:** |

--------------------------------------------------**X**

[Commerce's Final Results of Redetermination Pursuant to Court Remand of antidumping duty administrative review that reimbursement of antidumping duties occurred is sustained; final judgment entered for defendant.]

Decided: April 12, 2000

Powell, Goldstein, Frazer & Murphy LLP (Peter O. Suchman and Niall P. Meagher, Esqs.) for plaintiffs Hoogovens.

Skadden, Arps, Slate, Meagher & Flom LLP (Robert E. Lighthizer and John J. Mangan, Esqs.) for plaintiffs A.K. Steel, et al.

David W. Ogden, Acting Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Lucius B. Lau, Attorney); David R. Mason, Attorney, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of counsel, for defendant.

## OPINION AND ORDER

**WATSON, SENIOR JUDGE:**

## I.

### Introduction

In these consolidated antidumping duty actions, plaintiffs, foreign and domestic steel companies, move for judgment on the agency record under USCIT Rule 56.2 contesting certain aspects of the United States Department of Commerce's ("Commerce") Final Results of the first administrative review in Certain Cold-Rolled Carbon Steel Flat Products from the Netherland; Final Results of Antidumping Duty Administrative Review, 61 Fed. Reg. 48,465 (Dep't of Commerce Sept. 13, 1996) ("Final Results"). The first administrative review of the antidumping duty order[1] was requested by Hoogovens and covered the period of August 18, 1993 through July 31, 1994.

In its Final Results Commerce, inter alia, invoked its "reimbursement regulation," 19 C.F.R. § 353.26 (1994), after finding that Hoogovens Staal BV, a Netherlands steel producer and exporter

---

[1] The antidumping duty order on certain cold-rolled carbon steel flat products from the Netherlands was issued by Commerce in August 1993. See Antidumping Duty Order and Amendments to Final Determinations of Sales at Less Than Fair Value: Certain Cold-Rolled Carbon Steel Flat Products from the Netherlands, 58 Fed. Reg. 44,172 (Dep't of Commerce August 19, 1993).

("Hoogovens"), had reimbursed N.V.W. (USA), Inc. ("NVW"), the exporter's wholly-owned U.S.

sales office and the importer of record, for payment of antidumping duties. The application of the

regulation by Commerce in its Final Results significantly increased its finding of the margin of dumping,

and hence, Hoogovens' antidumping duty liability.

On March 13, 1998 , Senior Judge Dominick L. DiCarlo sustained the Final Results in certain

respects, including the validity of the regulation and Commerce's authority to apply it to related parties,

both of which were vigorously contested by Hoogovens, [2]  and remanded this case to Commerce

solely "to reconsider whether reimbursement [of antidumping duties] occurred * * * and [if so] cite to

evidence in the record that supports its decision." Hoogovens Staal BV v. United States, 4 F. Supp.2d

1213, 1221 (CIT March 13, 1998).

On January 27, 1999, Commerce's Final Results of Redetermination Pursuant to Court

Remand , dated January 25, 1999 ("Remand Results"), were filed with the court. Thereafter, in

accordance with an order dated February 26, 1999  establishing a schedule for filing comments on the

Remand Results, the parties in this action submitted comments. Familiarity with the court's previous

decision of Judge DiCarlo is presumed.[3]

Briefly, in the previous decision, the court found that aside from conclusory statements in the

Final Results regarding reimbursement of antidumping duties, Commerce failed to identify the evidence

---

[2] See note 4, infra, concerning this issue.

[3] By order entered by the Chief Judge on July 28, 1999, this action previously assigned to
Senior Judge DiCarlo, was reassigned to the writer.

of record upon which its conclusions were based, and failed  "to articulate a reasoned basis for its

decision." Hoogovens, 4 F. Supp. 2d at 1219.  Specifically, the court observed: "The Hoogoven-

NVW agreement includes no mention of antidumping duties or reimbursement. Although other

documents on the record suggest that reimbursement was occurring, Commerce does not identify which

evidence supports its finding of reimbursement." Id.

In its Remand Results, at 1, Commerce "continues to find that reimbursement of antidumping

duties within the meaning of 19 C.F.R. § 353.26 has occurred in this case."

Upon reconsideration of the evidence of record, including Hoogovens' submissions, Commerce

"concludes that the actions taken by Hoogovens with respect to the payment of duties on entries during

the period of review constitute reimbursement within the meaning of section 353.26 of the

Department's regulations." Id.  Thus, Commerce points out that Hoogovens conceded that it

transferred funds to NVW for the payment of antidumping duty cash deposits, and that neither the

agency agreement between Hoogovens and NVW nor any other evidence establishes any obligation on

the part of NVW to repay  Hoogovens any portion of those funds (which covered, indeed exceeded,

the amount of antidumping duties actually calculated by the Department for final assessment). Id. at 15.

As found by Commerce," [t]o the contrary, Hoogovens' statements on the record demonstrate that

NVW was under no obligation to repay the funds provided by Hoogovens for the payment of

antidumping duties, i.e., Hoogovens assumed responsibility for the payment of antidumping duties." Id.

Continuing, Commerce stresses in its  Remand Results that its reading of the agency agreement "is

supported by Hoogovens' repeated statements that NVW served "merely as a sales agent and

document processor and by Hoogovens' transfer of funds to NVW to pay antidumping duty cash deposits without a reciprocal obligation for NVW to repay such funds." Id.  Accordingly, Commerce also found that the "plain meaning" of the agency agreement between Hoogovens and NVW created an obligation on the part of  Hoogovens to reimburse the importer for antidumping duties.

## II.

## Standard of review.

In reviewing Commerce's Remand Results, the court will uphold such determination unless it is found "unsupported by substantial evidence on the record, or otherwise not in accordance with law." The Thai Pineapple Public Co., Ltd. v. United States, 187 F.3d 1362, 1365 (Fed. Cir. 1999)(citing Micron Technology, Inc. v. United States, 117 F. 3d 1386, 1393 (Fed. Cir. 1997) (quoting 19 U.S.C. §1516a(b)(1)(B)(i).  "Substantial evidence"  is more than a mere scintilla and [it is] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, taking into account the entire record, including whatever fairly detracts from the substantiality of the evidence." Atlantic Sugar Ltd. v. United States, 744 F.2d 1556, 1562 (Fed. Cir. 1984). "Substantial evidence" has  been defined as evidence "which could reasonably lead to [Commerce's] conclusion," so that the conclusion can be described as a "rational decision." Matsushita Elec. Indus., Ltd. v. United States, 750 F.2d 927, 933 (Fed. Cir. 1984).  See also Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). As the court's prior opinion points out, Commerce's determination must be reviewed by the court on the basis of rationale articulated and evidence relied on by the agency and not on post hoc rationalization of counsel.

Hoogovens, 4 F. Supp.2d at 1219, citing Timken Co. v. United States, 937 F. Supp. 953, 955 (1996).

### III.

### Parties' contentions.

Hoogovens asserts that the Remand Results are unsupported by substantial evidence and are otherwise contrary to law. Specifically, Hoogovens contends that Commerce misinterpreted the agency agreement between Hoogovens and NVW so as to place an obligation on the former to reimburse the latter for antidumping duties; that contrary to its existing practice, for its reimbursement determination, Commerce unlawfully relied solely on the transfer of funds to pay cash deposits for such duties (and credit memos evidencing the fund transfers); that Commerce ignored certain submissions by Hoogovens that demonstrate there was no reimbursement of antidumping duties; and that Commerce's determination reimbursement occurred was premature because it was made prior to the assessment of antidumping duties.

Defendant and the domestic steel producers posit that Commerce's Remand Results are supported by substantial evidence, viz., that the plain language of the agency agreement required Hoogovens to pay (or reimburse the importer) for antidumping duties; that Hoogovens concededly transferred funds to the importer for payment of antidumping duty deposits without a reciprocal obligation to repay the funds; and that Hoogovens' own statements show that the role of its U.S. affiliate was solely that of a sales agent and document processor. Further, defendant and the domestic steel producers dispute that the determination is premature and that Commerce ignored any evidence

submitted by Hoogovens.

# IV.

## Discussion

### A.

### The agency agreement.

.          While the court held in its prior decision that the agreement includes no mention of antidumping

duties or reimbursement, Hoogovens, 4 F. Supp. 2d at 1219, the court did not point to any language of

the agreement expressly precluding an obligation on the part of Hoogovens to reimburse antidumping

duties. Commerce finds in its Remand Results that  Hoogovens' transfer of funds to NVW for payment

of cash deposits without a reciprocal obligation to repay the funds is consistent with a reading of the

agreement to require Hoogovens to pay or reimburse the importer for antidumping duties.

Commerce considered, and properly rejected,  Hoogovens' arguments that the agreement must

be interpreted in light of the fact that it was executed some ten years prior to the antidumping duty

order, it makes no reference to antidumping duties, and there is an article of the agreement that would

make the importer, not Hoogovens,  responsible for paying any antidumping duties. The court agrees

that Commerce's interpretation of the agreement in light of Hoogovens' actions and all the facts and

circumstances was reasonable.

*B.*

**Other evidence of reimbursement relied on by Commerce**.

Significantly, in this case, Commerce's reimbursement determination does not purport to rest solely on the agency agreement,  that undisputedly makes no specific reference to reimbursement or payment of antidumping duties. Indeed, in the court's prior opinion, after noting that the agreement does not mention antidumping duties or reimbursement, stated "other documents on the record suggest that reimbursement was occurring" Hoogovens, 4 F. Supp. 2d at 1219.  In the Remand Results, Commerce relied on a combination of the agreement, the transfer of funds used by the importer for payment of antidumping duty deposits without a reciprocal obligation for repayment of the funds, and Hoogovens' statements that NVW functioned only as a sales agent, document processor, and communications link.[4]

---

[4] In support of its Remand Results, Commerce repeatedly refers to Hoogovens' statement that its U.S. affiliate was simply a sales agent and document processor. Apparently, Hoogovens had stressed its relationship to the importer to Commerce in connection with Hoogovens' argument that application of the reimbursement regulation to related parties is punitive, not remedial, and hence, is inconsistent with the statutory and regularity scheme. See 4 F. Supp. 2d at 1216-17. Based largely on Commerce's new interpretation of its reimbursement regulation in Color Television Receivers from the Republic of Korea, 61 Fed. Reg. 4,408 (Dep't of Commerce 1996), and the court's deference to an agency's interpretation of its regulations, Judge DiCarlo upheld the validity of the regulation and its application to related parties. However, Hoogovens' argument to Judge DiCarlo that the regulation was invalid  had  previously been articulated by a unanimous Federal Circuit decision in Torrington Co. v. United States, 127 F. 3d 1077, 1079 (1997), n., 2, which in dicta unequivocally opined:  "When Commerce has once assessed an importer a duty to compensate for any [margin of dumping], the statute does not seem to authorize a further assessment of duty to the same importer on the theory that a foreign supplier has helped an importer with its duty burden. Once the duty is paid a single time to account for the economic consequences of dumping, further duties would seem punitive rather than necessary to bring market prices into some hypothetical balance.* * *."   Significantly, the Federal Circuit reached the foregoing conclusions notwithstanding its recognition of  "substantial deference to an agency's interpretation of its own regulations." (citation omitted.). 127 F. 3d at 1080.

The Torrington dicta was not mentioned by Judge DiCarlo in his opinion, but fundamentally, an appellate court's dicta  no matter how well reasoned,  has no binding or precedential effect - - even in a court of inferior jurisdiction. Arguably, because the antidumping statute and its legislative history clearly

The court finds that foregoing combination of factual circumstances constitutes substantial evidence

supporting the determination.

**C.**

**Hoogovens' other evidence allegedly ignored  by Commerce.**

The Remand Results at 16 (Public version) demonstrate that the submissions cited by

Hoogovens claimed to show there was no reimbursement were specifically considered by Commerce:

> With respect to the importer certifications filed under section 353.26(b)
> of the Department's regulations, normally the Department would find
> the importer certifications to be probative of whether an understanding
> or agreement exists for the purpose of reimbursing duties.  However,
> where other, more compelling, evidence indicates that such
> certifications do not accurately reflect the arrangement between the
> exporter and the importer, the Department will not accord significant
> weight to such certifications.

Absent some showing to the contrary, the agency is presumed to have considered all the

evidence of record. See Ceramica Regiomontana v. United States , 810 F.2d 1137, 1139; Torrington

Co. v. United States, 790 F. Supp. 1161, 1167-68 (CIT 1992); Maine Potato Council v. United

States, 613 F. Supp. 1237, 1245 (CIT 1985). See also Wheatland Tube Co. v. United States, 161

F.3d 1365, 1369, 70 (Fed. Cir. 1998); Asociacion Columbiana de Exportadores de Flores v. United

States, 704 F. Supp. 1068, 1071 (1988). Moreover, "[t]hat plaintiff can point to evidence ... which

reject the use of antidumping duties for punitive purposes, the court should have invalidated the
regulation at least with respect to a wholly-owned subsidiary of the exporter. Nonetheless, with due
respect to the well-reasoned contrary views expressed by our  appellate court in Torrington as to the
validity of the reimbursement regulation, since that issue was fully considered and decided by Judge
DiCarlo, this court is constrained to treat Judge DiCarlo's holding as to the validity of the regulation as
the law of the case.

detracts from ... [Commerce's] decision and can hypothesize a ... basis for a contrary determination is

neither surprising nor persuasive." Matsushita Elec. Indus. Co., 750 F.2d at 936.

In should be noted that Commerce declined to accord significant weight to the certifications. In

reviewing agency determinations, the court declines to reweigh or reinterpret the evidence of record.

See Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1996) (noting that the substantial

evidence standard "frees the reviewing courts of the time-consuming and difficult task of weighing the

evidence, it gives proper respect to the expertise of the administrative tribunal and it helps promote the

uniform application of the statute."). It is not the province of this court to review the record evidence to

determine whether a different conclusion could be reached, but to determine whether Commerce's

determination is supported by substantial evidence. As the Supreme Court has observed: "The

possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative

agency's finding from being supported by substantial evidence." Consolo, 383 U.S. at 619-20 (1966).

See also    Arkansas v. Oklahoma, 503 U.S. 91 (1992) (courts should not supplant agency's findings

that are supported by substantial evidence merely my identifying alternative findings supported by

substantial evidence); and   Inland Steel Industries, Inc. v. United States, 188 F. 3d 1349, 1359 (Fed.

Cir. 1999), citing P.P.G. Indus., Inc. v. United States, 978 F. 2d 1232, 1236 (Fed. Cir. 1992).

## D.

### Commerce's alleged sole reliance on payment of cash deposits.

The court has also considered  Hoogovens' contention  that the transfer of funds for cash

deposits of antidumping duties to the importer are not  alone sufficient to support a finding of

reimbursement, since that approach would be contrary to Commerce's prior practice and judicial

determinations.  However, as stressed by defendant and the domestic steel producers, the Remand

Results make it clear that Hoogovens' payment of  cash deposits was only one factor in a combination

of several factors showing that reimbursement had occurred.

**E.**

**Commerce's subsequent reviews.**

The parties have referred to the final results of the administrative reviews covering subsequent

periods in which Commerce determined there was no reimbursement of antidumping duties by

Hoogovens.      Fundamentally, of course, the records before Commerce in subsequent review periods

are not part of the record of a prior review. Hoogovens, 4 F. Supp. 2d at 1218 ("Whatever additional

information that persuaded Commerce that Hoogovens had discontinued its practice of reimbursing

NVW during the second period of review was not a part of the record for this [first] review."). In any

event, the facts and circumstances of the subsequent administrative review periods are quite

distinguishable from those in the first administrative review.

Thus, in the final results of the second administrative review, 62 Fed. Reg. 18,476 (Dep't of

Commerce April 15, 1997), which were before the court in Bethlehem Steel Corp. v. United States,

27 F. Supp. 2d 201 (CIT 1998), Commerce's determination there was no reimbursement of

antidumping duties was sustained by the court based on evidence that: (1) Hoogovens and its affiliated

importer had revised their agency agreement, thereby making the importer solely responsible for paying

any antidumping duties to be assessed; and (2) the importer had begun refunding to the producer

antidumping duty cash deposits previously advanced.  See also this court's recent decision in

Hoogovens Staal BV, et al. v. United States, 86 F. Supp. 2d 1317        (CIT January 21, 2000),

involving the third administrative review.

**F.**

**Hoogovens' prematurity claim.**

Hoogovens contends that a determination of reimbursement of antidumping duties is premature prior to the final margin calculation and assessment of antidumping duties. The contention has some superficial logical basis, but as explained by Commerce in the Remand Results at 17, Hoogovens simply ignores that the reimbursement determination must be made as part of the administrative review process and calculation of the total dumping margin by making the appropriate adjustment required by the regulation  prior to the assessment of antidumping duties in liquidation of the entries.  As pointed out by Commerce, the reimbursement regulation requires an adjustment of U.S. price in the final margin calculation, which adjustment must obviously be made prior to liquidation of the entries and assessment of antidumping duties, citing  PO Corp. v. United States, 652 F. Supp. 724, 737 (CIT 1987). See also Hoogovens, 4 F. Supp. 2d at 1218 (recognizing that "as part of the final margin calculation, Commerce adjusts the U.S. price downward to reflect the amount of duty reimbursed to, or paid on behalf of, the importer.").

**V.**

**Conclusion**

For the foregoing reasons, the <u>Remand Results</u> are sustained, and final judgment will be entered

for defendant.

New York, New York
Dated: April 12, 2000                        _____
                                             James L. Watson, Senior Judge

**UNITED STATES COURT OF INTERNATIONAL TRADE**