**Slip Op. 03-141**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS**

| | |
|---|---|
| LUOYANG BEARING FACTORY, | : |
| Plaintiff and Defendant-Intervenor, | : |
| v. | : Consol. Court No. 99-12-00743 |
| UNITED STATES, | : |
| Defendant, | : |
| and | : |
| THE TIMKEN COMPANY, | : |
| Defendant-Intervenor and Plaintiff. | : |

[Commerce's <u>Remand Results II</u> are affirmed.  Case dismissed.]


     <u>Hume & Associates, PC</u> (<u>Robert T. Hume</u>) for Luoyang, plaintiff and defendant-intervenor.

     <u>Peter D. Keisler</u>, Assistant Attorney General; <u>David M. Cohen</u>, Director, and <u>Jeanne E. Davidson</u>, Deputy Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (<u>Ada E. Bosque</u>); of counsel: <u>Amanda L. Blaurock</u>, Attorney, Office of the Chief Counsel for Import Administration, United States Department of Commerce, for the United States, defendant.

     <u>Stewart and Stewart</u> (<u>Terence P. Stewart</u> and <u>Wesley K. Caine</u>) for Timken, defendant-intervenor and plaintiff.


                                        Dated: October 27, 2003

**OPINION**

## I.   Standard of Review

The Court will uphold Commerce's redetermination pursuant to the Court's remand unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (1994).   Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966).

## II.  Background

On April 14, 2003, this Court issued an opinion and order directing the United States Department of Commerce, International Trade Administration ("Commerce"), to:

(a)  point to specific evidence demonstrating that the type of steel at issue (i.e., hot-rolled bearing quality steel bar) purchased by the PRC trading company was subsidized; and

(b)  examine if, and only if, Commerce finds that the PRC

trading company import prices do not constitute the "best available information," whether or not Indonesian data (that is, Indonesian import statistics and export data from Japan to Indonesia) constitute the "best available information" over export data from Japan to India to value the bearing quality steel bar used in the production of TRB cups and cones.

Luoyang Bearing Factory v. United States ("Luoyang II"), 27 CIT ___, ___, 259 F. Supp. 2d 1357, 1366 (2003).[1]

On July 14, 2003, Commerce submitted its Final Results of Redetermination Pursuant to Court Remand ("Remand Results II"). On August 12, 2003, Luoyang submitted comments to this Court regarding the Remand Results II. See Comments on Final Results Pursuant to Remand ("Luoyang's Comments"). Timken also submitted comments to this Court on August 13, 2003. See Comments of Timken, Def.-Intervenor, to Commerce's Final Results of Remand Redetermination ("Timken's Comments"). Subsequently, on August 28, 2003, Luoyang submitted rebuttal comments, which were followed by Timken's rebuttal comments on September 2, 2003. See Rebuttal Comments to Def.-Intervenor's Comments on Commerce's Final Results of Remand Determination ("Luoyang's Rebuttal") and Rebuttal Comments of Timken, Def.-Intervenor, to Luoyang's Comments on the Department of Commerce's Final Results of Remand Re-Determination ("Timken's

---

[1] The Court's opinion and order in Luoyang II, 27 CIT ___, 259 F. Supp. 2d 1357, stems from the Court's opinion and order in Luoyang Bearing Factory v. United States ("Luoyang I"), 26 CIT ___, 240 F. Supp. 2d 1268 (2002), familiarity with which is presumed.

Rebuttal"). Finally, on September 10, 2003, Commerce submitted its response to Luoyang's comments. See Def.'s Resp. to Luoyang's Comments to the Final Results of Redetermination Pursuant to Remand ("Commerce's Resp.").

## III. Contentions of the Parties

### A. Luoyang's Contentions

Luoyang argues that Commerce's Remand Results II do not satisfy the Court's remand order. See Luoyang's Comments at 2-15. In particular, Luoyang contests: (1) Commerce's subsidy suspicion policy as an explanation offered by Commerce to disregard the PRC trading company data to value either all of the subject merchandise at issue or a portion of the subject merchandise purchased by Luoyang through the trading company and used by Luoyang in the manufacture of tapered roller bearing ("TRB") cups and cones, see id. at 3, 4-10; and (2) Commerce's decision to use export data from Japan to India to value TRB cups and cones. See id. at 10-14.

With respect to Commerce's subsidy suspicion policy, Luoyang asserts that since Commerce's subsidy suspicion policy was never raised in the Final Results of 1997-1998 Antidumping Duty Administrative Review and Final Results of New Shipper Review of Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From the People's Republic of China ("Final Results"), 64 Fed. Reg.

61,837 (Nov. 15, 1999), the Court cannot consider Commerce's argument because it is not on the record. See Luoyang's Comments at 3, 4-5 (citing Hoogovens Staal BV v. United States, 22 CIT 139, 143, 4 F. Supp. 2d 1213, 1218 (1998).[2] Luoyang further asserts that "Luoyang was never given an opportunity to refute the subsidy allegation." Luoyang's Comments at 5. Moreover, Luoyang maintains that "Commerce provided no specific evidence of subsidies[,]" Luoyang's Comments at 6, and "Commerce failed to conduct any investigation" regarding the subsidies.[3] Id. at 7. Finally,

_____

    [2] The Court in Luoyang II, 27 CIT at ___, 259 F. Supp. 2d at 1364, addressed an identical argument posed by Luoyang by stating that "if Luoyang's argument is taken to its logical conclusion, any explanation offered by Commerce to comply with [the] Court's opinion and order . . . would be deemed a form of post hoc rationalization."

    [3] Citing to two countervailing duty determinations relied on by Commerce to support Commerce's reason to believe or suspect that the steel purchased by Luoyang from the PRC trading company was manufactured in a certain country whose steel was subsidized, Luoyang argues that "Commerce did not review the [subsidy] programs in detail and did not attempt to tie any specific [subsidy] program to Luoyang's steel producer." Luoyang's Comments at 6. Luoyang then points to the fact that Commerce recently revised downward a certain subsidy rate for a certain steel producer in the certain country at issue for Luoyang's proposition that "even a cursory review of the evidence, without any investigation, establishes that any benefit Luoyang's steel producer could have received were no more than de minimis." Id. at 6-7. Moreover, to support its position that Commerce failed to provide specific evidence of subsidies and that Commerce failed to conduct any investigation regarding the subsidies, Luoyang points to evidence provided in the TRBs XIV administrative review. See Luoyang's Comments at 7 n.14.

    The Court will not entertain arguments posed by Luoyang
(continued...)

Luoyang asserts that if the Court permits Commerce to apply its subsidy suspicion policy, then: (1) "Commerce should also . . . appl[y] the policy to the Indian import data used for the surrogate scrap steel value[,]" Luoyang's Comments at 8; (2) "the Court will acknowledge that Commerce can adopt arguments not addressed during the administrative proceeding[,]" id.; and (3) "Commerce's NME regulations will be changed [since] [n]early every country has subsidy programs that are generally available and Commerce will be prevented from using prices from those countries." Id.; see also id. at 8-10.

Next, Luoyang argues that "Commerce's preference for a single surrogate country should not trump the statutory requirement to use the 'best available information.'" Luoyang's Comments at 10. In particular, Luoyang argues that "the Japan to India values are not the best available and do not reflect prices 'in' India." Id. at 11. Luoyang maintains that Indonesian import data constitutes the best available information for valuing the bearing quality steel bar used in the production of TRB cups and cones. See id. at 12-

---

[3](...continued)
relating to an administrative record that is not before the Court. See Hoogovens Staal BV v. United States, 24 CIT 242, 248, 93 F. Supp. 2d 1303, 1308 (2000) (stating that "the records before Commerce in subsequent review periods are not part of the record of a prior review" and citing Hoogovens, 22 CIT at 144, 4 F. Supp. 2d at 1218).

13.[4]


   B.   **Commerce's Contentions**

   Commerce responds that pursuant to the Court's opinion and order in <u>Luoyang II</u>, 27 CIT at ___, 259 F. Supp. 2d at 1364-65, Commerce "relied upon its own CVD findings to determine that there was particular, specific, and objective evidence to uphold its reason to believe or suspect that the price at issue was subsidized."  <u>Remand Results II</u> at 5.  Commerce maintains that consistent with Congress' instructions and absent the requirement to conduct a formal investigation, the generally available information revealed that export and industry-specific subsidies were broadly available and "subsidies were utilized by the steel industry and were countervailable."[5]  Commerce's Resp. at 4 (citing

---

[4]  Luoyang continues to argue as it did in <u>Luoyang II</u>, 27 CIT at ___, 259 F. Supp. 2d at 1360 n. 4, that "Commerce failed to disregard aberrational data" in the <u>Remand Results II</u>.  Luoyang's Comments at 13.  As the Court stated in <u>Luoyang II</u>, the Court will not address this argument since it is outside the scope of this remand redetermination and particularly since this Court in <u>Luoyang Bearing Factory</u>, 26 CIT at ___, 240 F. Supp. 2d at 1285, held that "the Court disagrees with Luoyang that the Court should order that Commerce exclude the values for January 1998 and March 1998 from the export data from Japan to India.  Luoyang may not usurp Commerce's role as fact-finder and substitute Luoyang's analysis for the result reached by Commerce."

[5]  Responding to Luoyang's argument that a negative finding for one steel supplier undermined Commerce's subsidy suspicion policy reasoning, Commerce explains:

(continued...)

Remand Results II at 8). Commerce, therefore, asserts that
Commerce "possessed reason to believe or suspect that the market-
economy supplier, an exporter and member of a subsidized industry,
would . . . benefit from the subsidies and that . . . the prices of
the steel inputs obtained from the supplier would be distorted."
Commerce's Resp. at 4-5; see also id. at 7.

Commerce further explains that since Commerce found that the
PRC trading company import prices did not constitute the "best
available information," Commerce, pursuant to the Court's opinion
and order in Luoyang II, examined Indonesian data (that is,
Indonesian import statistics and export data from Japan to
Indonesia). Commerce maintains that although Commerce found export
data from Japan to India and export data from Japan to Indonesia to
be both acceptable values, Commerce, in its discretion elected to
use export data from Japan to India in order to value the subject

_____

[5](...continued)
The negative determination referenced involved only one
large steel producer, while the two affirmative orders
demonstrate that other smaller steel companies from the
country in question had above de minimis subsidy levels.
[Commerce] find[s] the rates for the smaller steel
companies to be more predictive and representative of the
steel producers in the country in question. In light of
these affirmative determinations for other steel
producers, [Commerce's] negative finding for the one
large company merely stands for the proposition that one
steel producer received de minimis subsidies.

Remand Results II at 18.

merchandise at issue.  <u>See</u> Commerce's Resp. at 8-9 (citing <u>Tehnoimportexport, UCF America Inc. v. United States</u>, 16 CIT 13, 18, 783 F. Supp. 1401, 1406 (1992)).

### C.    Timken's Contentions

Timken generally agrees with Commerce and maintains that Commerce complied with the Court's remand instructions.  <u>See</u> Timken's Comments at 1, 8, 9; <u>see also</u> Timken's Rebuttal at 1-11.

## IV. Analysis

The Court finds that Commerce complied with the Court's opinion and order in <u>Luoyang II</u>, 27 CIT ___, 259 F. Supp. 1357, directing Commerce to point to specific evidence demonstrating that the type of steel at issue (i.e., hot-rolled bearing quality steel bar) purchased by the PRC trading company was subsidized.  In particular, in Remand Results II, Commerce found that:

> the type of subsidies maintained by the government of the country in question, and relied on in making [Commerce's] determination to reject the PRC trading company prices, <u>are not specific to any particular product or type of steel</u>.  This is demonstrated by the CVD investigations relied on by [Commerce] which show that <u>the same subsidy programs exist regardless of the type of steel products being produced and exported.  Furthermore, the export subsidy programs maintained by the government in question were offered to domestic companies engaged in foreign trade.  Enrollment in these export subsidy programs was not based on the merchandise produced or a particular industry but was only contingent on a company's export performance</u>.

Id. at 6 (emphasis added); see also Commerce's Resp. at 3-5.  Based upon this information, Commerce established an adequate rebuttable presumption that the steel at issue (i.e., hot-rolled bearing quality steel bar) was subsidized.  Specifically, since Commerce had information that the subsidies were not specific to a particular product or type of steel, Commerce made a logical inference supported by substantial evidence that Commerce had reason to believe or suspect that the steel purchased by the PRC trading company was subsidized.  It then became Luoyang's burden to overcome this presumption.  Contrary to Luoyang's assertion that it was never given an opportunity to refute Commerce's subsidy allegation, Luoyang had the opportunity during Remand Results I and Remand Results II, but failed to rebut Commerce's presumption.

Next, the Court also finds that Commerce complied with the Court's opinion and order in Luoyang II, 27 CIT ___, 259 F. Supp. 1357, directing Commerce to examine whether or not Indonesian data (that is, Indonesian import statistics and export data from Japan to Indonesia) constitute the "best available information" over export data from Japan to India to value the bearing quality steel bar used in the production of TRB cups and cones only if Commerce finds that the PRC trading company import prices do not constitute the "best available information."  In Remand Results II, Commerce stated:

Consistent with the [Court's] instructions . . . [Commerce] ha[s] now analyzed the Indonesian import data from HS category 7228.30 and [export data from Japan] to Indonesia . . . from HS category 7228.30.900. Based on this examination, [Commerce] find[s] the Indonesian HS number, as with the Indian import HS number, to be a basket category that encompasses a broad range of hot-rolled bars and rods of alloy steel, in addition to the bearing quality steel bars and rods used in TRB cup and cone production. . . . As for the Japanese export statistics, [Commerce] find[s] that they provide a breakdown of the broad six-digit HS category 7228.30 into several narrowly defined sub-categories. Although the Japanese HS category 7228.30.900 (Bars and Rods, of Other Alloy Steel) does not specifically isolate bearing quality steel as does the [United States] HTS category 7228.30.20, this Japanese category would include the type of bearing quality steel bar that is used to manufacture the TRB cup and cone. Therefore, [Commerce] find[s] the Indonesian import data, as a basket HS category, to be less reliable in comparison to the more narrowly defined Japanese export data (HS number 7228.30.900). . . .

In comparing the [export data from Japan] to Indonesia . . . to the [United States] benchmark range ($642/MT to $834/MT), [Commerce] find[s] that the average [export data from Japan to Indonesia] value, $702/MT, provides a reasonable measure for this input. Because the Japanese tariff category is the narrowest category which could contain bearing quality steel, and because it is consistent with values contained in [Commerce's] [United States] benchmark category, [Commerce] believe[s] that these data are reliable for valuing steel used in the production of cups and cones.

Therefore, the record of the underlying proceeding contains two acceptable values for bearing quality steel, [export data from Japan] to India and [export data from Japan] to Indonesia. Moreover, the two values are equally good in terms of their contemporaneity with the [period of review], the fact that they are both based on public information, and they are exclusive of duties and taxes. . . . Therefore, relying upon [Commerce's] preference for valuing factors in a single country (19 CFR § 351.408(c)(2) [1998]), [Commerce] determine[s] that the best information available for valuing bearing

quality steel is [export data from Japan to India].
Remand Results II at 14-16 (citations omitted).

The Court further finds that contrary to Luoyang's argument that Indonesian import data constitutes the best available information for valuing the bearing quality steel bar used in the production of TRB cups and cones, see Luoyang's Comments at 12-13, Luoyang may not usurp Commerce's role as fact finder and substitute their analysis of the data for the result reached by Commerce. Moreover, the Court finds that Commerce's decision to choose export data from Japan to India over export data from Japan to Indonesia was reasonable.  See Tehnoimportexport, 16 CIT at 18, 783 F. Supp. at 1406 ("When Commerce is faced with the decision to choose between two reasonable alternatives and one alternative is favored over the other in their eyes, then they have the discretion to choose accordingly.").

Based on the foregoing and upon reviewing the parties' submissions, the Court finds that Commerce complied with the Court's opinion and order in Luoyang II, 27 CIT ___, 259 F. Supp. 2d 1357.

## V.    Conclusion

The Court affirms Commerce's <u>Remand Results II</u>.  This case is dismissed.

                                        _____
                                             NICHOLAS TSOUCALAS
                                              SENIOR JUDGE


Dated:    October 27, 2003
          New York, New York