# United States Court of Appeals for the Federal Circuit

2006-1386

PARKDALE INTERNATIONAL,

Plaintiff-Appellant,

and

RUSSELL METALS EXPORT,

Plaintiff,

v.

UNITED STATES,

Defendant-Appellee,

and

UNITED STATES STEEL CORPORATION,

Defendant-Appellee.

Richard P. Ferrin, Hunton & Williams LLP, of Washington, DC, argued for plaintiff-appellant. With him on the brief was William Silverman.

David S. Silverbrand, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee United States. With him on the brief were David M. Cohen, Director, and Patricia M. McCarthy, Assistant Director. Of counsel on the brief were John D. McInerney, Chief Counsel; Berniece A. Browne, Senior Counsel; and Kemba T. Eneas, Attorney, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of Washington, DC.

Jeffrey D. Gerrish, Skadden, Arps, Slate, Meagher & Flom, LLP, of Washington, DC, argued for defendant-appellee United States Steel Corporation. With him on the brief were John J. Mangan and Robert E. Lighthizer.

Appealed from: United States Court of International Trade

Judge Judith M. Barzilay

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

2006-1386

PARKDALE INTERNATIONAL,

Plaintiff-Appellant,

and

RUSSELL METALS EXPORT,

Plaintiff,

v.

UNITED STATES,

Defendant-Appellee,

and

UNITED STATES STEEL CORPORATION,

Defendant-Appellee.

_____

DECIDED: February 9, 2007

_____

Before MAYER, RADER and GAJARSA, <u>Circuit Judges</u>.

MAYER, <u>Circuit Judge</u>.

Parkdale International ("Parkdale") appeals the judgment of the United States

Court of International Trade denying its motion for summary judgment on the agency

record.[*]  Parkdale Int'l v. United States, 429 F. Supp. 2d 1324 (Ct. Int'l Trade 2006). Because the Department of Commerce's ("Commerce") application of its May 6, 2003, reseller policy to Parkdale's subject entries during the Period of Review ("POR"), August 1, 2002 to July 31, 2003, does not have an impermissibly retroactive effect, we affirm.

Background

Parkdale is a reseller, importer, and exporter of corrosion-resistant carbon steel products ("CORE") from Canada to the United States.  Commerce first published an antidumping duty order on CORE from Canada in 1993.  Antidumping Duty Orders: Certain Corrosion-Resistant Carbon Steel Flat Products from Canada, 58 Fed. Reg. 44,162 (Aug. 19, 1993).  Consequently, subject CORE may enter the United States only if accompanied by a cash deposit of the estimated dumping duties.  See 19 U.S.C. § 1673e(a)(3).  While liability to pay dumping duties accrues upon entry of subject merchandise, see 19 C.F.R. § 141.1(a), the actual duty is not formally determined until after entry, and not paid until the goods are liquidated by the Bureau of Customs and Border Protection ("Customs"), see, e.g., Bethlehem Steel Corp. v. United States, 27 F. Supp. 2d 201, 207 (Ct. Int'l Trade 1998) ("Given the retrospective nature of Commerce's administrative reviews, an exporter can not expect to predict exactly its potential antidumping duty liability at the time of import into the United States.").

On August 1, 2003, Commerce provided an opportunity for interested parties to request an administrative review of producers, resellers, and importers of subject CORE for the POR between August 1, 2002 and July 31, 2003.  Antidumping or Countervailing Duty, Order, Finding, or Suspended Investigation; Opportunity to Request

---

[*]     Russell Metals Export was a plaintiff in the proceeding before the Court of International Trade, but did not file a notice of appeal here.

Administrative Review, 68 Fed. Reg. 45,218 (Aug. 1, 2003). Several parties requested a review, but Parkdale chose not to participate. Commerce issued its preliminary results in September 2004, Certain Corrosion-Resistant Carbon Steel Flat Products from Canada: Preliminary Results of Antidumping Administrative Review, 69 Fed. Reg. 55,138 (Sept. 13, 2004), which Parkdale challenged as an interested party. Commerce rejected Parkdale's challenge, and issued its final results in March 2005. Certain Corrosion-Resistant Carbon Steel Flat Products from Canada: Final Results of Antidumping Administrative Review, 70 Fed. Reg. 13,458 (Mar. 21, 2005), as amended 70 Fed. Reg. 22,846 (May 3, 2005) ("Final Results"). There, Commerce provided that its May 6, 2003, reseller policy would apply to unreviewed resellers, like Parkdale, who purchased their CORE from a reviewed producer who did not know its goods were destined for the United States. See Final Results, 70 Fed. Reg. at 13,459; see also Antidumping and Countervailing Duty Proceedings: Assessment of Antidumping Duties, 68 Fed. Reg. 23,954 (May 6, 2003) ("Reseller Policy"). As a result, Parkdale's subject goods entered during the POR are set to be liquidated at the "all-others" rate (i.e., a simple average of the calculated company-specific dumping rates), not the producer-specific cash deposit rate that it paid upon entry of its goods (i.e., CORE producer Stelco, Inc.'s, dumping margin). The all-others rate is considerably higher than Parkdale's producer-specific cash deposit rate, 18.71% as compared to 4.24%.

Commerce initially proposed the Reseller Policy in 1998, for the purpose of clarifying how it applied the automatic liquidation provisions under 19 C.F.R. § 351.212 to resellers exporting subject merchandise to the United States. Antidumping and Countervailing Duty Proceedings: Assessment of Antidumping Duties, 63 Fed. Reg.

55,361 (Oct. 15, 1998). The October 1998, notice provided that if "the Department determines in the administrative review that the producer did not know that the merchandise it sold to the reseller was destined for the United States, the reseller's merchandise will not be liquidated at the assessment rate the Department determines for the producer or automatically at the rate required as a deposit at the time of entry. In that situation, the entries of merchandise from the reseller during the period of review will be liquidated at the all-others rate if there was no company-specific review of the reseller for that review period." Id. at 55,362.

Commerce subsequently requested additional comments on its proposal. Antidumping and Countervailing Duty Proceedings: Assessment of Antidumping Duties, 67 Fed. Reg. 13,361 (Mar. 25, 2002). Parkdale responded in April 2002, stating that, "until issuance of that March 25, 2002 notice, Canadian resellers had every reason to believe, at the time of importation, that their imports were subject to the existing practice, which has been either to apply automatic liquidation to all reseller entries, or to liquidate at the relevant manufacturers' rate, not to apply the 'all others' rate as a possible alternative rate depending on what the manufacturer did or did not know." Parkdale's comments notwithstanding, Commerce adopted the Reseller Policy on May 6, 2003, substantially as proposed in October 1998. In other words, prior to Commerce's adoption of the Reseller Policy, if Parkdale did not participate in an administrative review, its entries were liquidated at Stelco, Inc.'s ("Stelco"), cash deposit rate, regardless of whether an administrative review had been requested for Stelco. With the adoption of the new policy, however, because Stelco requested an

administrative review for the 2002-03 POR, Parkdale's decision not to undergo a review guaranteed that it would be subject to the higher all-others rate.

While Commerce initially characterized the Reseller Policy as a mere "clarification," it acknowledges that the policy gives rise to a "relatively significant change" for affected parties. Parkdale, 429 F. Supp. 2d at 1333 ("Commerce concedes that . . . there was a relatively significant change in [its] treatment of resellers."). However, the policy's impact is circumscribed because it only applies "to entries for which the anniversary month for requesting an administrative review is May 2003 or later." Reseller Policy, 68 Fed. Reg. at 23,956. Accordingly, any reseller potentially affected by the policy had notice of its impact prior to having to make the decision whether to participate in a subsequent administrative review, and thereby have its goods liquidated at a rate calculated specifically for it; or not to participate, and have its entries liquidated at the all-others rate.

After Commerce issued its Final Results, Parkdale filed suit in the Court of International Trade, arguing that application of the Reseller Policy to its subject goods entered prior to May 6, 2003, had an impermissibly retroactive effect. The trial court denied its challenge, and Parkdale appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

Discussion

"We review the Court of International Trade's judgment, affirming or reversing the final results of an administrative review, de novo. In so doing, we apply anew the same standard used by the court, and will uphold Commerce's determination unless it is unsupported by substantial evidence on the record, or otherwise not in accordance with

law." Hynix Semiconductor, Inc. v. United States, 424 F.3d 1363, 1367-68 (Fed. Cir. 2005) (citations and quotation marks omitted). "While we essentially step into the shoes of the Court of International Trade and duplicate its review, . . . we do not altogether ignore its informed opinion." Royal Thai Gov't v. United States, 436 F.3d 1330, 1335 (Fed. Cir. 2006) (citations omitted).

Parkdale contends that Commerce's application of its reseller policy to subject merchandise entered prior to its promulgation on May 6, 2003, is impermissibly retroactive. We disagree.

It is true that "[r]etroactivity is not favored in the law." Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988). However, a statute, rule, or policy "does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." Landgraf v. USI Film Prods., 511 U.S. 244, 269-70 (1994) (citations omitted) (emphasis added). To determine whether the application of a law or policy is impermissibly retroactive, we examine the "nature and extent of the change of the law," "the degree of connection between the operation of the new rule and a relevant past event," and "considerations of fair notice, reasonable reliance, and settled expectations." Princess Cruises, Inc. v. United States, 397 F.3d 1358, 1364 (Fed. Cir. 2005) (quoting Landgraf, 511 U.S. at 270).

The government concedes that Commerce's Reseller Policy constitutes a relatively significant change. Prior to its adoption, Commerce liquidated subject goods for resellers like Parkdale at the relevant producer-specific cash deposit rate, unless the

reseller or another interested party requested an administrative review of the reseller's entries. Under the Reseller Policy, however, because Stelco participated in the administrative review for the 2002-03 POR, Parkdale lost its ability to have its entries liquidated at Stelco's cash deposit rate. While this factor points in Parkdale's favor, the remaining two Landgraf factors align heavily against it, and preclude our finding impermissible retroactivity.

A retroactive rule "must also have a significant retroactive connection with past events." Princess Cruises, 397 F.3d at 1366. Parkdale argues that because resellers do not have the option of undoing importations entered before May 6, 2003, the connection between those entries of goods and the new rule is significant. We do not agree. Although the new policy affects Parkdale's ultimate liability, the degree of connection between the policy and Parkdale's subject entries is minimal.

Parkdale's decisions relating to the volume of CORE it imports in a given year are certainly dependant, at least in part, on what dumping rate it anticipates will ultimately be assessed against it. However, resellers import goods with the knowledge that changes may occur to duty margins until liquidation of subject entries. See 19 U.S.C. § 1500; Dart Exp. Corp. v. United States, 43 C.C.P.A. 64, 76 (1956); see also Bethlehem Steel, 27 F. Supp. 2d at 207; D & L Supply Co. v. United States, 841 F. Supp. 1312, 1315 (Ct. Int'l Trade 1993) ("The uncertainty of knowing the final amount of duties due at the time of entry is simply an inherent part of importing merchandise into the United States."). Indeed, "[n]o vested right to a particular classification or rate of duty or preference is acquired at the time of importation." N. Am. Foreign Trading Corp. v. United States, 783 F.2d 1031, 1032 (Fed. Cir. 1986) (citing Norwegian

Nitrogen Prods. Co. v. United States, 288 U.S. 294, 318, (1932)).  This stems from the fact that "the United States uses a 'retrospective' assessment system under which final liability for antidumping and countervailing duties is determined after merchandise is imported."  19 C.F.R. § 351.212(a).  While importers entering merchandise subject to an antidumping duty order are required to make a cash deposit of estimated antidumping duties, this rate is not final where an administrative review is initiated.  Accordingly, in cases involving importers' challenges to the application of new laws based on retroactivity, we have looked at liquidation as the paramount relevant "past event."  See, e.g., Travenol Labs., Inc. v. United States, 118 F.3d 749, 753 (Fed. Cir. 1997) (holding that liquidation of entries "is the triggering or operative event" for deciding whether application of a statute or regulation is impermissibly retroactive); see also Syva Co. v. United States, 681 F. Supp. 885, 890 (Ct. Int'l Trade 1988) (stating that "the statute merely prescribes the time for payment of duties once the entries are liquidated, and since liquidation, the operative event triggering the time for assessment of interest, occurred after the statute was enacted, there is no retroactive application which would deprive plaintiff of any vested substantive right").

Viewing liquidation, or commencement of the administrative review, as the proper "triggering event," as opposed to entry of subject goods, is particularly appropriate here because but for Stelco's participation in the challenged administrative review, the Reseller Policy would not have precluded Parkdale from having its goods liquidated at Stelco's duty margin.  Accordingly, because the significance of the Reseller Policy to entries pre-dating it is minimal, and the primary effect of the policy is prospective, i.e., it applies to liquidations post-dating its adoption, we conclude that its effect cannot

properly be considered impermissibly retroactive. To the extent that weighing the first two Landgraf factors nonetheless permits of uncertainty in this holding, considerations of fair notice, reasonable reliance, and settled expectations remove any doubt.

As discussed above, an importer's duty is not fixed until liquidation. Therefore, despite the fact that Parkdale enjoyed liquidation at Stelco's dumping margin for several years, it, nevertheless, could not have an objectively reasonable settled expectation that it would not, at some point, be subjected to a different margin. This is especially so because an overriding purpose of Commerce's administration of antidumping laws is to calculate dumping margins as accurately as possible, and this requires altering dumping rates to reflect changes in, inter alia, policy or commercial realities. See, e.g., Rhone Poulenc, Inc. v. United States, 899 F.2d 1185, 1191 (Fed. Cir. 1990). Moreover, since 1998, Parkdale was on notice that Commerce might adopt the Reseller Policy. In view of the additional notice Commerce provided in 2002 and the comments Parkdale submitted in response, it undoubtedly had fair notice of the change. Finally, after its comments in April 2002, because Parkdale could reasonably anticipate that adoption of the Reseller Policy was imminent, it ceased to have a credible claim to reasonable reliance on the assumption that Commerce would nevertheless continue to apply its previous reseller policy in future administrative reviews.

## Conclusion

Accordingly, the judgment of the United States Court of International Trade is affirmed.

## AFFIRMED

2006-1386                                             9