# United States Court of Appeals for the Federal Circuit

---

**GPX INTERNATIONAL TIRE CORPORATION
AND HEBEI STARBRIGHT TIRE CO., LTD.,**
*Plaintiffs-Appellees,*

AND

**TIANJIN UNITED TIRE & RUBBER
INTERNATIONAL CO., LTD.,**
*Plaintiff-Appellee,*

**v.**

**UNITED STATES,**
*Defendant-Appellant,*

AND

**TITAN TIRE CORPORATION AND UNITED STEEL,
PAPER AND FORESTRY, RUBBER,
MANUFACTURING, ENERGY, ALLIED
INTERNATIONAL AND SERVICE WORKERS
INTERNATIONAL UNION, AFL-CIO-CLC,**
*Defendants-Appellants,*

AND

**BRIDGESTONE AMERICAS, INC. AND
BRIDGESTONE AMERICAS TIRE OPERATIONS,
LLC,**
*Defendants-Appellants.*

---

2011-1107, -1108, -1109

---

Appeals from the United States Court of International Trade in consolidated case no. 08-CV-0285, Judge Jane A. Restani.

---

## ON PETITION FOR REHEARING

---

MICHAEL D. PANZERA, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, filed a petition for rehearing en banc and a letter brief for defendant-appellant United States. With him on the petition were TONY WEST, Assistant Attorney General, STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and FRANKLIN E. WHITE, JR., Assistant Director. Of counsel was JOHN D. MCINERNEY, Chief Counsel, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of Washington, DC.

TERENCE P. STEWART, Stewart and Stewart, of Washington, DC, filed a combined petition for panel rehearing and rehearing en banc and a letter brief for defendants-appellants Titan Tire Corporation, et al. With him on the petition and letter brief were WESLEY K. CAINE and ELIZABETH J. DRAKE.

DANIEL L. PORTER, Curtis, Mallett-Prevost, Colt & Mosle LLP, of Washington, DC, filed responses to the petitions and a letter brief for plaintiffs-appellees GPX International Tire Corporation and Hebei Starbright Tire Co., LTD. With him on the responses and letter brief were JAMES P. DURLING, WILLIAM H. BARRINGER, and MATTHEW P. MCCULLOUGH.

FRANCIS J. SAILER, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt, LLP, of Washington, DC, filed a response to the petitions and a letter brief for plaintiff-appellee Tianjin United Tire & Rubber International Co., LTD. With him on the response and letter brief were ANDREW T. SCHUTZ and MARK E. PARDO.

---

Before RADER, *Chief Judge*, LINN and DYK, *Circuit Judges*.

DYK, *Circuit Judge*.

## O R D E R

The United States and Titan Tire Corporation, et al. petition for rehearing of our December 19, 2011, decision in *GPX International Tire Corp. v. United States*, 666 F.3d 732 (Fed. Cir. 2011). In that decision, we held that "in amending and reenacting the trade laws in 1988 and 1994, Congress adopted the position that countervailing duty law does not apply to NME countries," and thus, "countervailing duties cannot be applied to goods from NME countries." *Id.* at 745.

On March 13, 2012, following our decision in *GPX*, but while this petition for rehearing was pending, Congress enacted legislation to apply countervailing duty law to NME countries. Application of Countervailing Duty Provisions to Nonmarket Economy Countries, Pub. L. No. 112-99, 126 Stat. 265 (2012) (to be codified at 19 U.S.C. §§ 1671, 1677f-1).[1] Section 1(a) of the new legislation provides that "the merchandise on which countervailing duties shall be imposed . . . includes a class or kind of merchandise imported, or sold (or likely to be sold) for importation, into the United States from a nonmarket economy country." *Id.* § 1(a) (to be codified at 19 U.SC.

---

[1] The full text of the March 13, 2012, countervailing duty legislation is attached to this order.

§ 1671(f)(1)).  The legislation also applies retroactively to "(1) all proceedings initiated under subtitle A of title VII of [the Tariff Act of 1930] on or after November 20, 2006; (2) all resulting actions by U.S. Customs and Border Protection; and (3) all civil actions, criminal proceedings, and other proceedings before a Federal court relating to [those] proceedings."  *Id.* § 1(b).  The proceeding in this case was initiated on November 27, 2006, pursuant to section 702(b)(1) of the Tariff Act of 1930.  *See* Notice of Initiation of Countervailing Duty Investigations: Coated Free Sheet Paper From the People's Republic of China, Indonesia, and the Republic of Korea, 71 Fed. Reg. 68,546 (Dep't of Commerce Nov. 27, 2006).  As a result, section 1(a) of the new legislation applies to this proceeding.  In order to implement World Trade Organization ("WTO") requirements, section 2(a) of the new legislation further provides for an adjustment of antidumping duties on imported goods where the Department of Commerce ("Commerce") determines that a countervailable subsidy "has increased the weighted average dumping margin" for the goods, to prevent double counting of countervailing duties and antidumping duties.  § 2(a) (to be codified at 19 U.SC. § 1677f-1(f)(1)).  However, the double-counting provision is applicable only to proceedings initiated "on or after the date of the enactment of [the] Act."  *Id.* § 2(b)(1). Thus, the double counting provision would not apply to this case.

Following the enactment of the new legislation, we requested and received further briefing from the parties "commenting on the impact of this legislation on further proceedings in this case."

I

Having reviewed the briefs submitted by the parties, two things are clear from the new legislation.  First, Congress clearly sought to overrule our decision in *GPX*.

The language of section 1(b) is clear in this respect. Moreover, during the floor debate, our decision in *GPX* was referenced by name and discussed at length. One of the bill's sponsors specifically noted that the new legislation "overturns an erroneous decision by the Federal circuit [sic] that the Department of Commerce does not have the authority to apply these countervailing duty rules to nonmarket economies." 158 Cong. Rec. H1167 (daily ed. Mar. 6, 2012) (statement of Rep. Dave Camp).

Second, in section 2(a) of the new legislation, Congress changed the law with respect to double counting, but made the new rule against double counting applicable only to proceedings initiated on or after March 13, 2012, the date of Act's enactment. As noted, the new provision would not apply to this case. Congress enacted the double-counting provision of the new legislation in order to "bring[] the United States into compliance with its obligations by requiring the Department of Commerce to make an adjustment when there is evidence of a double remedy."[2] *Id.* Congress clearly did not view this statutory

---

[2]    On March 11, 2011, the Appellate Body of the WTO determined that the United States' "imposition of double remedies, that is, the offsetting of the same subsidization twice by the concurrent imposition of anti-dumping duties calculated on the basis of an NME methodology and countervailing duties, is inconsistent with Article 19.3 of the [Agreement on Subsidies and Countervailing Measures]." Appellate Body Report, *United States—Definitive Anti-Dumping and Countervailing Duties on Certain Products from China*, ¶ 611(d), WT/DS379/AB/R (Mar. 11, 2011). However, "we have repeatedly indicated that adverse WTO decisions have no bearing on the reasonableness of Commerce's actions." *Dongbu Steel Co. v. United States*, 635 F.3d 1363, 1368 (Fed. Cir. 2011). Accordingly, "[w]e will not attempt to perform duties that fall within the exclusive province of the political branches, and we therefore refuse to overturn Commerce's [] practice[s] based on any ruling by the WTO or other international body unless and until such ruling

change as reflecting a clarification of existing law, but rather as a change in the law. Thus, when Congress added the double counting provision, we must "assume Congress intended to effect some change in the meaning of the statute." *AK Steel Corp. v. United States*, 226 F.3d 1361, 1368 (Fed. Cir. 2000). The clear implication of this new provision is that the pre-existing statute did not contain a prohibition against double counting. As the Supreme Court has noted, "[w]hen Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect. . . . The reasonable construction is that the amendment was enacted as an exception, not just to state an already existing rule." *Stone v. INS*, 514 U.S. 386, 397 (1995). In short, a statute cannot be interpreted in a manner that would "negate[] its recent revision, and indeed would render it [] largely meaningless." *Rumsfeld v. Forum for Academic & Institutional Rights*, 547 U.S. 47, 57-58 (2006). We conclude that the statute prior to the enactment of the new legislation did not impose a restriction on Commerce's imposition of countervailing duties on goods imported by NME countries to account for double counting.[3]

## II

Although the scope of the new legislation is clear, appellees nonetheless contend that the new legislation is unconstitutional because (1) it attempts to prescribe a

---

has been adopted pursuant to the specified statutory scheme." *Corus Staal BV v. Dep't of Commerce*, 395 F.3d 1343, 1349 (Fed. Cir. 2005).

[3] The Court of International Trade ("Trade Court") in *GPX International Tire Corp. v. United States*, 645 F. Supp. 2d 1231, 1240-43 (Ct. Int'l Trade 2009), had previously found that Commerce's imposition of both countervailing duties and antidumping duties on NME countries under the pre-existing law amounted to "unreasonable" double counting. The new legislation makes clear that this theory was not correct.

rule of decision for this case after our decision in *GPX* was rendered; and (2) it improperly creates a special rule applicable only to this case (or perhaps a few others) due to the different effective dates in the two provisions; it thus creates a situation in which both antidumping and countervailing duties may be imposed, without providing a mechanism to account for potential double counting.

We think the first of these arguments is without merit. The Supreme Court has counseled that "[w]hen a new law makes clear that it is retroactive, an appellate court must apply that law in reviewing judgments still on appeal that were rendered before the law was enacted, and must alter the outcome accordingly." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 226 (1995). Unlike *Plaut*, where Congress attempted to undo a final judgment, *see id.* at 227, this case was still pending on appeal when Congress enacted the new legislation, as our mandate had not yet issued, *see* Fed. R. App. P. 41(b)-(c); *see also Beardslee v. Brown*, 393 F.3d 899, 901 (9th Cir. 2004) ("An appellate court's decision is not final until its mandate issues."). It makes no difference that Congress, in the legislative history, addressed the decision in this case by name. *See, e.g.*, *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1139 (9th Cir. 2009) ("[A] statute affecting pending cases, indeed designating them by name and number, [does] not offend separation of powers because Congress was changing the law applicable to those cases rather than impermissibly interfering with the judicial process." (citing *Robertson v. Seattle Audubon Soc'y*, 503 U.S. 429, 440 (1992))). Thus, no issue is raised by the fact that our decision in *GPX* had issued prior to enactment of the new legislation because this case remained pending on appeal.

The second issue, however, is a question of first impression as to which we have received only cursory briefing. The government urges that "[t]o the extent that appellees . . . argue that the new law is unconstitutional,

such an argument should be decided by the trial court in the first instance." United States Br. 4 n.3. We agree that this issue should be considered by the Trade Court in the first instance.

Upon consideration of the petition for rehearing of our December 19, 2011, decision in this case,

IT IS ORDERED THAT:

(1) The petitions for rehearing are granted.

(2) This case is remanded to the Trade Court for a determination of the constitutionality of the new legislation and for other appropriate proceedings.

(3) The mandate of this court will issue on May 16, 2012.

FOR THE COURT

May 9, 2012                     /s/ Jan Horbaly
     Date                       Jan Horbaly
                                Clerk

Public Law 112–99
112th Congress

An Act

To apply the countervailing duty provisions of the Tariff Act of 1930 to nonmarket economy countries, and for other purposes.

Mar. 13, 2012
[H.R. 4105]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

**SECTION 1. APPLICATION OF COUNTERVAILING DUTY PROVISIONS TO NONMARKET ECONOMY COUNTRIES.**

(a) IN GENERAL.—Section 701 of the Tariff Act of 1930 (19 U.S.C. 1671) is amended by adding at the end the following:

"(f) APPLICABILITY TO PROCEEDINGS INVOLVING NONMARKET ECONOMY COUNTRIES.—

"(1) IN GENERAL.—Except as provided in paragraph (2), the merchandise on which countervailing duties shall be imposed under subsection (a) includes a class or kind of merchandise imported, or sold (or likely to be sold) for importation, into the United States from a nonmarket economy country.

"(2) EXCEPTION.—A countervailing duty is not required to be imposed under subsection (a) on a class or kind of merchandise imported, or sold (or likely to be sold) for importation, into the United States from a nonmarket economy country if the administering authority is unable to identify and measure subsidies provided by the government of the nonmarket economy country or a public entity within the territory of the nonmarket economy country because the economy of that country is essentially comprised of a single entity.".

(b) EFFECTIVE DATE.—Subsection (f) of section 701 of the Tariff Act of 1930, as added by subsection (a) of this section, applies to—

(1) all proceedings initiated under subtitle A of title VII of that Act (19 U.S.C. 1671 et seq.) on or after November 20, 2006;

(2) all resulting actions by U.S. Customs and Border Protection; and

(3) all civil actions, criminal proceedings, and other proceedings before a Federal court relating to proceedings referred to in paragraph (1) or actions referred to in paragraph (2).

19 USC 1671 note.

**SEC. 2. ADJUSTMENT OF ANTIDUMPING DUTY IN CERTAIN PROCEEDINGS RELATING TO IMPORTS FROM NONMARKET ECONOMY COUNTRIES.**

(a) IN GENERAL.—Section 777A of the Tariff Act of 1930 (19 U.S.C. 1677f–1) is amended by adding at the end the following:

"(f) ADJUSTMENT OF ANTIDUMPING DUTY IN CERTAIN PROCEEDINGS RELATING TO IMPORTS FROM NONMARKET ECONOMY COUNTRIES.—

"(1) IN GENERAL.—If the administering authority determines, with respect to a class or kind of merchandise from a nonmarket economy country for which an antidumping duty is determined using normal value pursuant to section 773(c), that—

"(A) pursuant to section 701(a)(1), a countervailable subsidy (other than an export subsidy referred to in section 772(c)(1)(C)) has been provided with respect to the class or kind of merchandise,

"(B) such countervailable subsidy has been demonstrated to have reduced the average price of imports of the class or kind of merchandise during the relevant period, and

"(C) the administering authority can reasonably estimate the extent to which the countervailable subsidy referred to in subparagraph (B), in combination with the use of normal value determined pursuant to section 773(c), has increased the weighted average dumping margin for the class or kind of merchandise,

the administering authority shall, except as provided in paragraph (2), reduce the antidumping duty by the amount of the increase in the weighted average dumping margin estimated by the administering authority under subparagraph (C).

"(2) MAXIMUM REDUCTION IN ANTIDUMPING DUTY.—The administering authority may not reduce the antidumping duty applicable to a class or kind of merchandise from a nonmarket economy country under this subsection by more than the portion of the countervailing duty rate attributable to a countervailable subsidy that is provided with respect to the class or kind of merchandise and that meets the conditions described in subparagraphs (A), (B), and (C) of paragraph (1).".

Applicability.
19 USC 1677f–1
note.

(b) EFFECTIVE DATE.—Subsection (f) of section 777A of the Tariff Act of 1930, as added by subsection (a) of this section, applies to—

(1) all investigations and reviews initiated pursuant to title VII of that Act (19 U.S.C. 1671 et seq.) on or after the date of the enactment of this Act; and

(2) subject to subsection (c) of section 129 of the Uruguay Round Agreements Act (19 U.S.C. 3538), all determinations

issued under subsection (b)(2) of that section on or after the date of the enactment of this Act.

Approved March 13, 2012.

LEGISLATIVE HISTORY—H.R. 4105 (S. 2153):

CONGRESSIONAL RECORD, Vol. 158 (2012):
     Mar. 6, considered and passed House.
     Mar. 7, considered and passed Senate.

○