# United States Court of Appeals for the Federal Circuit

_____

**GPX INTERNATIONAL TIRE CORPORATION, HEBEI STARBRIGHT TIRE CO., LTD., TIANJIN UNITED TIRE & RUBBER INTERNATIONAL CO., LTD.,**
*Plaintiffs-Appellants*

**MINISTRY OF COMMERCE, PEOPLE'S REPUBLIC OF CHINA,**
*Plaintiff*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

**BRIDGESTONE AMERICAS, INC., BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC,**
*Defendants*

**TITAN TIRE CORPORATION, UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO-CLC,**
*Defendants-Appellees*

_____

2014-1188, 2014-1248

_____

Appeals from the United States Court of International Trade in No. 1:08-cv-00285-JAR, 1:08-cv-00286-JAR, 1:08-cv-00351-JAR, 1:08-cv-00352-JAR, 1:08-cv-00358-JAR, 1:08-cv-00360-JAR, 1:08-cv-00361-JAR, Judge Jane A. Restani.

————————————

Decided: March 13, 2015

————————————

JAMES P. DURLING, Curtis, Mallet-Prevost, Colt & Mosle LLP, Washington, DC, argued for plaintiffs-appellants GPX International Tire Corporation, Hebei Starbright Tire Co., Ltd. Also represented by DANIEL L. PORTER, CHRISTOPHER DUNN, MATTHEW PAUL MCCULLOUGH, ROSS BIDLINGMAIER, WILLIAM H. BARRINGER.

MARK B. LEHNARDT, Lehnardt & Lehnardt, LLC, Liberty, MO, for plaintiff-appellant Tianjin United Tire & Rubber International Co., Ltd.

ALEXANDER V. SVERDLOV, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington DC, argued for defendant-appellee United States. Also represented by STUART F. DELERY, JEANNE E. DAVIDSON, FRANKLIN E. WHITE, JR.; JOHN D. MCINERNEY, DANIEL JOSEPH CALHOUN, DEVIN S. SIKES, Office of the Chief Counsel for Trade Enforcement & Compliance, United States Department of Commerce, Washington, DC.

ELIZABETH DRAKE, Stewart and Stewart, Washington, DC, argued for defendants-appellees Titan Tire Corporation, United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers

International Union, AFL-CIO-CLC. Also represented by TERENCE PATRICK STEWART, PATRICK JOHN MCDONOUGH.

———————

Before DYK, O'MALLEY, and TARANTO, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* DYK.

Concurring opinion filed by *Circuit Judge* O'MALLEY.

DYK, *Circuit Judge.*

GPX International Tire Corp. and Hebei Starbright Tire Co., Ltd. (collectively, "GPX") appeal a Court of International Trade ("Trade Court") decision upholding the Department of Commerce's ("Commerce") imposition of both antidumping and countervailing duties. Commerce acted pursuant to a 2012 law that overruled this court's decision in *GPX International Tire Corp. v. United States*, 666 F.3d 732 (Fed. Cir. 2011) ("*GPX I*"), *reh'g granted*, 678 F.3d 1308 (Fed. Cir. 2012) ("*GPX II*"), and permitted Commerce to impose countervailing duties with respect to non-market economy ("NME") countries retroactively to proceedings initiated on or after November 20, 2006. Because the new law does not violate the Ex Post Facto Clause of Article I, Section 9 of the U.S. Constitution or the Due Process Clause of the Fifth Amendment to the U.S. Constitution, we affirm.

BACKGROUND

Much of the background relevant to this case is recounted in this court's prior decisions in *GPX I* and *Guangdong Wireking Housewares & Hardware Co. v. United States*, 745 F.3d 1194 (Fed. Cir. 2014) ("*Wireking*").

Under the Tariff Act of 1930, as amended, Commerce may impose two types of duties on imports that injure domestic industries: (1) antidumping duties on goods "sold

in the United States at less than . . . fair value," 19 U.S.C. § 1673; and (2) countervailing duties on goods that receive a "countervailable subsidy" from a foreign government, *id.* § 1671(a).

For goods imported from market economy countries, Commerce may impose both antidumping and countervailing duties. Until recently, Commerce maintained that it could not impose countervailing duties on imports from NME countries—focusing on Soviet bloc countries—because of the difficulty in calculating countervailing subsidies in those countries. *See GPX I*, 666 F.3d at 735. This longstanding Commerce position was upheld by this court in *Georgetown Steel Corp. v. United States*, 801 F.2d 1308, 1314–18 (Fed. Cir. 1986), as not being contrary to the statute. Thereafter, Congress ratified Commerce's prior position by amending and reenacting the countervailing duty statute in 1988 and 1994. *See GPX I*, 666 F.3d at 738–39.

Beginning on November 20, 2006, however, Commerce indicated that it was considering taking a new position by applying countervailing duties to imports from China, a NME country. *See* Notice of Initiation of Countervailing Duty Investigations: Coated Free Sheet Paper from the People's Republic of China, Indonesia, and the Republic of Korea, 71 Fed. Reg. 68,546, 68,549 (Dep't of Commerce Nov. 27, 2006) ("Given the complex legal and policy issues involved, and on the basis of the Department's discretion as affirmed in *Georgetown Steel*, the Department intends during the course of this investigation to determine whether the countervailing duty law should now be applied to imports from [China]."). And on March 29, 2007, Commerce issued a memorandum stating that "the Department's policy that gave rise to the *Georgetown Steel* litigation does not prevent us from concluding that the [Chinese] Government has bestowed a countervailable subsidy upon a Chinese producer." Coun-

tervailing Duty Investigation of Coated Free Sheet Paper from the People's Republic of China—Whether the Analytical Elements of the *Georgetown Steel* Opinion Are Applicable to China's Present-Day Economy (Mar. 29, 2007), *available at* http://ia.ita.doc.gov/download/nme-sep-rates/prc-cfsp/china-cfs-georgetown-applicability.pdf ("*Georgetown Steel* Memo").

In this case, on June 18, 2007, following the *Georgetown Steel* Memo, several domestic tire manufacturers petitioned Commerce to impose both antidumping and countervailing duties on certain Chinese tires. *See* Certain New Pneumatic Off-the-Road Tires from the People's Republic of China: Initiation of Countervailing Duty Investigation, 72 Fed. Reg. 44,122 (Dep't of Commerce Aug. 7, 2007). On July 15, 2008, Commerce issued its final countervailing duty determination. Certain New Pneumatic Off-the-Road Tires from the People's Republic of China: Final Affirmative Countervailing Duty Determination and Final Negative Determination of Critical Circumstances, 73 Fed. Reg. 40,480 (Dep't of Commerce July 15, 2008).

On September 9, 2008, GPX challenged Commerce's countervailing duty determination at the Trade Court, which ultimately remanded to Commerce with instructions to forgo imposition of countervailing duties because "it is too difficult for Commerce to determine . . . whether and to what degree double counting is occurring." *GPX Int'l Tire Corp. v. United States*, 715 F. Supp. 2d 1337, 1346 (Ct. Int'l Trade 2010).

On appeal, we affirmed the Trade Court's holding that countervailing duties could not be applied to imports from NME countries, concluding that Congress had ratified Commerce's prior position. *See GPX I*, 666 F.3d at 745. Specifically, we found that "when amending and reenacting countervailing duty law in 1988 and 1994, Congress

legislatively ratified earlier consistent administrative and judicial interpretations that government payments cannot be characterized as 'subsidies' in a non-market economy context, and thus that countervailing duty law does not apply to NME countries." *Id.* at 734.

On March 13, 2012, less than three months after the release of our decision in *GPX I*, Congress enacted new legislation overruling that decision. *See An Act to Apply the Countervailing Duty Provisions of the Tariff Act of 1930 to Nonmarket Economy Countries, and for other Purposes*, Pub. L. No. 112-99, 126 Stat. 265 (2012) (codi-fied at 19 U.S.C. §§ 1671, 1677f-1) (the "new law"). The new law authorizes the imposition of countervailing duties on NME countries both prospectively and retro-spectively, applying to "all proceedings initiated . . . on or after November 20, 2006." 126 Stat. at 265 § 1(a); *see also Wireking*, 745 F.3d at 1197 & n.1. When antidumping and countervailing duties imposed on the same goods double count for the same unfair trade advantage, the new law adjusts for double counting prospectively to proceedings initiated after March 13, 2012, but not retro-spectively. *Wireking*, 745 F.3d at 1197–98.

We granted rehearing of *GPX I* and in a supplemental opinion we recognized that "Congress clearly sought to overrule our decision in *GPX* [*I*]." *GPX II*, 678 F.3d at 1311. We remanded the case to the Trade Court "for a determination of the constitutionality of the new legisla-tion . . . ." *Id.* at 1313. On remand, the Trade Court rejected challenges to the new law under, *inter alia*, the Ex Post Facto Clause and the Due Process Clause of the U.S. Constitution. *GPX Int'l Tire Corp. v. United States*, 893 F. Supp. 2d 1296, 1334 (Ct. Int'l Trade 2013). GPX appeals the Trade Court's determinations under the Ex Post Facto Clause and Due Process Clause.

We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5). We review questions of constitutional or statutory interpretation de novo. *Ashley Furniture Indus., Inc. v. United States*, 734 F.3d 1306, 1309 (Fed. Cir. 2013) (citations omitted).

DISCUSSION

I

While this appeal was pending, we decided *Wireking*, holding that the new law, while retroactive, was not punitive and did not violate the Ex Post Facto Clause. 745 F.3d at 1207. In *Wireking*, we examined the new law under the Supreme Court's framework for determining whether a civil law is punitive as articulated in *Smith v. Doe I*, 583 U.S. 84 (2003). *See Wireking*, 745 F.3d at 1202–03 (citing *Smith*, 538 U.S. at 92). We found that the new law was remedial, rather than punitive, and therefore did not violate the Ex Post Facto Clause. *See id.* at 1204–07. GPX acknowledges that "*Wireking* found the [new law] to be non-punitive, and not subject to the *Ex Post Facto* Clause," Reply Br. 23, but continues to argue that "[p]articularly with regard to these Appellants, the long period of retroactivity makes the retroactive duties especially punitive and thus unconstitutional" under the Ex Post Facto Clause. Reply Br. 29.

Contrary to GPX's contentions, the holding in *Wireking* was not fact-specific, and any alleged factual distinctions are irrelevant to the ex post facto analysis. We held that "[t]he predominant effect of the new law is remedial," and that the outcome did not depend on the facts of a particular case, referring to the new law's "remedial effect *generally*." 745 F.3d at 1207 (emphasis added). Thus, whether "this particular case involves an excessive period of retroactivity," Reply Br. 24, does not alter the ex post facto analysis, and GPX's ex post facto challenge is foreclosed by *Wireking*.

## II

GPX also argues that the new law violates the Due Process Clause because it operates retroactively. The government responds that "legislation cannot implicate the due process clause unless it disturbs a vested right," Appellee's Br. 15 (citations omitted), and that GPX's due process challenge is therefore foreclosed at the outset by its failure to establish a vested right in this case. According to the government, GPX has no vested right to the countervailing duty deposits here because they could not have a vested right in a particular rate of duty.

Contrary to the government, we do not think that the outcome of the due process analysis depends upon a determination that a vested right exists. None of the Supreme Court cases that the government relies on for this proposition, nor any decision of this court, establishes such a threshold test. While a vested right analysis (looking to "whether the new provision attaches new legal consequences to events completed before its enactment," *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994)) may be relevant to the due process analysis, it is not a threshold test. *See United States v. Carlton*, 512 U.S. 26, 33 (1994); *Landgraf*, 511 U.S. at 273–74; *see also Weaver v. Graham*, 450 U.S. 24, 29–30 (1981) ("Evaluating whether a right has vested is important for claims under the Contracts or Due Process Clauses, which solely protect pre-existing entitlements." (citations omitted)).[1]

---

[1] GPX argues that it has a vested right to its countervailing duty cash deposits in this case, which would have automatically liquidated in September 2009 but for GPX's challenge to the government's authority to collect countervailing duties in the first place. We see no signifi-

In determining whether the Due Process Clause has been violated, "the strong deference accorded legislation in the field of national economic policy is no less applicable when that legislation is applied retroactively." *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729 (1984). Thus, due process is satisfied "simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose." *Id.* at 730. Under this deferential standard, "it will be a rare circumstance where federal legislation that is retroactive will be held unconstitutional under the Due Process Clause." *Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1342 (Fed. Cir. 2001) (en banc). And the burden is on GPX to establish that Congress lacked a rational basis for the retroactive application of the new law. *See Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976) ("It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." (citations omitted)).

In a number of cases, the Supreme Court has rejected due process challenges to retroactive statutes with features similar to the new law here. *See Carlton*, 512 U.S. at 31–35 (upholding a retroactive tax against a due process challenge because the amendment at issue "was adopted as a curative measure," when "Congress acted to correct what it reasonably viewed as a mistake in the original . . . provision"); *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 184–86, 191 (1992) (upholding against a due process challenge a 1987 statute, which overturned a

---

cance for the due process analysis in the delay in liquidation of the cash deposits.

1985 decision of the Michigan Supreme Court, that applied retroactively to require payment of employment benefits back to 1981; it was "a rational means of meeting th[e] legitimate objective" of "correct[ing] the unexpected results of the Michigan Supreme Court's . . . opinion"); *see also Commonwealth Edison*, 271 F.3d at 1344–45 (listing "more than ten occasions" in which the Supreme Court rejected due process challenges to retroactive statutes).

The Supreme Court has articulated five considerations that are relevant to the rational basis analysis here under the Due Process Clause: (1) whether the retroactive provision is "wholly new," *United States v. Hemme*, 476 U.S. 558, 568 (1986); (2) whether the retroactive action resolves uncertainty in the law, *see Romein*, 503 U.S. at 184–85, 191–92; (3) the length of the period of retroactivity, *see Carlton*, 512 U.S. at 32–33; (4) whether the affected party had notice of the potential change prior to the conduct that was retroactively regulated, *see Pension Benefit*, 467 U.S. at 731–32; and (5) whether the retroactive provisions are remedial in nature, *see Romein*, 503 U.S. at 191. In this case, at least four of these considerations (excluding the length of the retroactive effect) weigh heavily against finding a due process violation.

First, contrary to GPX's assertion, the new law here is not "wholly new." *Hemme*, 476 U.S. at 568. *Hemme* distinguished a "wholly new tax" from "amendments that bring about certain changes in operation of the tax laws." *See id.*; *see also Carlton*, 512 U.S. at 27, 34 (noting that "[t]he amendment at issue here [retroactively limiting the availability of a recently added deduction] certainly is not properly characterized as a 'wholly new tax'"). As we explained in *Wireking*, "this law simply *extends* Commerce's ability to impose countervailing duties to a new group of importers." 745 F.3d at 1206 (emphasis added). Thus, this is not a "wholly new" law, but rather one "that

bring[s] about certain changes in operation" of pre-existing countervailing duties. *Hemme*, 476 U.S. at 568.

Second, the new law resolved uncertainty in the law with respect to whether countervailing duties applied to NME countries. Congress did not retroactively change the language of an otherwise clear statute, *see Hemme*, 476 U.S. at 572, nor did it overrule a final interpretation of a federal statute by the United States Supreme Court. When Commerce initiated this countervailing duty investigation in late 2007, the state of the law with respect to countervailing duties was unclear. As we explained in *GPX I, Georgetown Steel* itself was unclear. *See GPX I*, 666 F.3d at 738–39 (explaining that "we do not find the statute to be clear on its face" and that "*Georgetown Steel* could perhaps be interpreted as resting on *Chevron*"). And even if we look to our opinion in *GPX I* as a clear statement of the law at the time, it was only clear for a matter of days before Congress overturned it, and there is no suggestion that any action here was taken in reliance on *GPX I*.

Moreover, even if there were action taken in reliance during the interim three months, *GPX I* was not the final word given the possibility of Supreme Court review, so the parties could not reasonably rely on *GPX I* as the final resolution of the subject. Thus, by passing the new law, Congress acted promptly to adopt a "curative measure," "to correct what it reasonably viewed as a mistake in the original . . . provision . . . ." *Carlton*, 512 U.S. at 26, 31–32. The retroactive effect serves the legitimate government purpose of "correct[ing] the unexpected results" of our decision in *GPX I*. *Romein*, 503 U.S. at 191; *see also Graham v. Goodcell*, 282 U.S. 409, 427 (1931) ("[D]efects in the administration of the law may be cured by subsequent legislation without encroaching upon constitutional right . . . .").

Third, while the period of retroactivity in this case is substantial, it is shorter than that in other cases where the Supreme Court has rejected due process challenges. In this case, the new law applies retroactively for a period of a little over five years, from March 13, 2012, the date of enactment, to November 20, 2006, the earliest date to which the new law applies. Even longer periods have been held not to violate due process. *See Romein*, 503 U.S. at 184–86 (approximately six years of retroactive effect); *United States v. Heinszen & Co.*, 206 U.S. 371, 378, 382, 386 (1907) (approximately seven years of retroactive effect).

Fourth, GPX clearly had notice that Commerce would apply countervailing duties to NMEs prior to the imports in this case. The imports that are subject to the retroactive countervailing duties here all occurred *after* GPX had notice of the change in government policy. GPX had notice of the possible change as early as November 20, 2006, when Commerce first indicated that it was considering applying countervailing duties to imports from China. *See* 71 Fed. Reg. at 68,549. The new law is retroactive only to proceedings initiated after that date. Commerce thereafter continued to reiterate its view on March 29, 2007, when Commerce announced the change of policy in the *Georgetown Steel* Memo. And GPX most certainly had notice that Commerce would apply countervailing duties to its imports no later than August 7, 2007, when Commerce first initiated this countervailing duty investigation. All of these dates are prior to December 17, 2007, the earliest date of the imports here. Thus, GPX had notice of a possible change in government policy before it imported the goods at issue, and before any adverse government action was taken.

Even if GPX had lacked notice of the new law and detrimentally relied on the prior state of the law, these factors are not dispositive of the due process analysis.

The retroactive tax in *Carlton* did not violate due process even though the challenger "specifically and detrimentally relied" on the prior state of the law, and even though the challenger did not have prior notice of the change in the law. *See Carlton*, 512 U.S. at 33–34; *see also Usery*, 428 U.S. at 16, 18 (upholding a retroactive law even though "it may be that the liability imposed by the Act for disabilities suffered by former employees was not anticipated at the time of actual employment").

Finally, the new law is directed to the remedial administration of trade duties, as opposed to raising government revenue. Trade statutes, such as the new law, are designed to be remedial and to preserve American industry. *See Norwegian Nitrogen Prods. Co. v. United States*, 288 U.S. 294, 318 (1933) ("No one has a legal right to the maintenance of an existing rate or duty."); *see also Wireking*, 745 F.3d at 1205 ("It is well established that antidumping and countervailing duty laws are remedial in nature."). Although trade duties are forward-looking in part, the government also has a clear interest in fashioning a remedy for damaging past acts, "level[ing] the playing field for particular American manufacturers," and "remedy[ing] the harm American manufacturers and their workers experience as a result of unfair trade practices." *Wireking*, 745 F.3d at 1206. The remedial aspect of the new law is not merely forward-looking, but the imposition of duties is remedial in eliminating past advantages enjoyed by the importers.

Companies, such as GPX, that operate in the highly regulated field of international trade can expect some retroactive liability, even if the remedial legislation were "severely retroactive" (which the new law is not). *Commonwealth Edison*, 271 F.3d at 1346, 1348 ("[P]articipants in [a] highly regulated field can expect liability for remediation costs."). Moreover, with respect to trade duties, imports always occur with uncertainty as

to the extent of final duties. *See Parkdale Int'l v. United States*, 475 F.3d 1375, 1376 (Fed. Cir. 2007) ("While liability to pay dumping duties accrues upon entry of subject merchandise, the actual duty is not formally determined until after entry, and not paid until the goods are liquidated by [Customs]." (citations omitted)); *see also N. Am. Foreign Trading Corp. v. United States*, 783 F.2d 1031, 1032 (Fed. Cir. 1986) ("No vested right to a particular classification or rate of duty or preference is acquired at the time of importation." (citations omitted)).

In the few cases where the Supreme Court has invalidated retroactive statutes under the Due Process Clause, the challenged laws were "most unusual," *Commonwealth Edison*, 271 F.3d at 1342, and in many instances have been called into question by later Supreme Court decisions. *See Carlton*, 512 U.S. at 34 (Earlier "cases were decided during an era characterized by exacting review of economic legislation under an approach that has long since been discarded." (citation and quotation omitted)); *see also Pension Benefit*, 467 U.S. at 733 (questioning whether *Railroad Retirement Board v. Alton Railroad Co.*, 295 U.S. 330 (1935), which invalidated a retroactive pension statute, "retains vitality" (citation omitted)). In any event, each of these cases involved the retroactive creation of a wholly new statute, a prolonged period of retroactivity, and a total lack of notice at the time of the conduct being regulated or taxed. *See, e.g.*, *E. Enters. v. Apfel*, 524 U.S. 498, 549 (1998) (Kennedy, J., concurring) (Justice Kennedy would have invalidated on due process grounds a statute that had retroactive effects based solely on a company's roster of employees approximately thirty-five years prior to the statute's enactment); *Blodgett v. Holden*, 275 U.S. 142, 147 (1927) (retroactive imposition of a new gift tax without even "the slightest" notice to the taxpayer violated due process); *Nichols v. Coolidge*, 274 U.S. 531, 542–43 (1927) (estate tax with retroactive effect

on property "transferred [so many] years ago" that it was "beyond recall" violated due process); *Forbes Pioneer Boat Line v. Bd. of Comm'rs of Everglades Drainage Dist.*, 258 U.S. 338, 338–40 (1922) (no indication of notice when a state legislature sought to retroactively validate the collection of tolls for a canal); *see also Welch v. Henry*, 305 U.S. 134, 147 (1938) ("In the cases in which this Court has held invalid the taxation of gifts made and completely vested before the enactment of the taxing statute, decision was rested on the ground that the nature or amount of the tax could not reasonably have been anticipated by the taxpayer at the time of the particular voluntary act which the statute later made the taxable event." (citations omitted)); *Commonwealth Edison*, 271 F.3d at 1342 (collecting cases).

Under these circumstances, we cannot say that the new law does not rationally relate to the government's interest in retroactively remedying the damage from unfair foreign trade practices. The new law violates neither the Ex Post Facto Clause nor the Due Process Clause.

**AFFIRMED**

# United States Court of Appeals
# for the Federal Circuit

---

**GPX INTERNATIONAL TIRE CORPORATION,
HEBEI STARBRIGHT TIRE CO., LTD.,
TIANJIN UNITED TIRE & RUBBER
INTERNATIONAL CO., LTD.,**
*Plaintiffs-Appellants*

**MINISTRY OF COMMERCE, PEOPLE'S REPUBLIC
OF CHINA,**
*Plaintiff*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

**BRIDGESTONE AMERICAS, INC.,
BRIDGESTONE AMERICAS TIRE OPERATIONS,
LLC,**
*Defendants*

**TITAN TIRE CORPORATION, UNITED STEEL,
PAPER** AND **FORESTRY, RUBBER,
MANUFACTURING, ENERGY, ALLIED
INDUSTRIAL** AND **SERVICE WORKERS
INTERNATIONAL UNION, AFL-CIO-CLC,**
*Defendants-Appellees*

---

2014-1188, 2014-1248

---

Appeals from the United States Court of International Trade in No. 1:08-cv-00285-JAR, 1:08-cv-00286-JAR, 1:08-cv-00351-JAR, 1:08-cv-00352-JAR, 1:08-cv-00358-JAR, 1:08-cv-00360-JAR, 1:08-cv-00361-JAR, Judge Jane A. Restani.

---------------------

O'MALLEY, *Circuit Judge,* concurring.

I continue to believe, as discussed in my concurrence in *Guangdong Wireking Housewares v. United States*, 745 F.3d 1194, 1209–11 (Fed. Cir. 2014) (O'Malley, J., concurring in the result), that Pub. L. No. 112-99, 126 Stat. 265 (2012) ("the Act"), did not effect a retroactive change in the law. GPX challenges the retroactive application of the Act under the Due Process Clause of the Fifth Amendment. Because GPX does not challenge the prospective application of the Act, and because, in my view, the Act does not operate retroactively, I do not believe we need to consider whether the Act violates the Due Process Clause. Because we are bound by the determination in *Guangdong* that the Act does apply retroactively, I agree with the majority that we must proceed to consider the due process question. And I agree with the majority that Congress had a rational basis upon which to justify retroactive application of the Act.